# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1348

_____

United States of America

*Plaintiff - Appellee*

v.

Ryan Christopher Lumpkins, also known as Dale E. Hubbard

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: June 13, 2012
Filed: August 6, 2012

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Ryan Lumpkins entered a conditional plea of guilty to possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18

U.S.C. § 924(c). He now appeals the denial by the district court[1] of his motion to suppress evidence obtained from a warrantless search of a rental vehicle, as well as the district court's determination that he is a career offender for purposes of the United States Sentencing Guidelines. For the reasons discussed below, we affirm.

On the afternoon of February 3, 2011, two officers of the Kansas City Police Department patrolling in a car observed a 2010 Ford Taurus with heavily tinted windows pass by. Because the officers believed the tint was sufficiently dark to violate a Kansas City ordinance, they followed the vehicle to investigate. The vehicle pulled into the driveway of a nearby residence, and the officers pulled in behind it and activated the emergency lights of the squad car. The driver, Lumpkins, exited the vehicle, looked at the officers, and started walking away at a casual pace. One of the officers made eye contact with Lumpkins and asked him to "come here," and Lumpkins refused, replying that he was on private property. The officers placed him in handcuffs out of concern for officer safety. Because the side and rear windows of the vehicle were effectively blacked out, one officer looked through the front windshield of the vehicle "just to verify that we didn't have a threat in the car."

While verifying that the vehicle had no other occupants, the officer noticed a plastic bag holding a green leafy substance in the center console that appeared consistent with how the officer had "seen marijuana bags packaged in the past." He also noticed what appeared to be a small marijuana blunt in the cup holder-ashtray area. The officers attempted to seize the contraband but discovered that the doors of the vehicle were locked and, in addition, that the keys to the vehicle were lying on the driver's seat, locked inside.

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

The officers soon learned from a status check on the vehicle's license plates that it was registered to Budget Rent-a-Car. It had been rented by Latisha Hughes. Lumpkins was not listed as an authorized driver. Hughes was present at the residence and came outside to talk to the officers, but she did not have a spare key and refused to give consent for the officers to enter the vehicle. The officers contacted Budget Rent-a-Car and explained the situation to Michelle Konecny, a local office manager. Konecny informed the officers that the vehicle was overdue for return and that Budget had been demanding its return from Hughes for several days. Konecny requested that the officers wait with the vehicle until she arrived to take custody of it.

When Konecny arrived, she showed the officers proof of ownership of the vehicle and unlocked it remotely with a spare set of keys. She then consented to a search of the vehicle. A drug dog which had been brought to the scene immediately alerted to the center console, and the previously observed marijuana was removed. The drug dog alerted again to the center console, however, and the officers discovered crack cocaine, powder cocaine, ecstasy pills, and more marijuana within the console. They also discovered a Herstal 5.7 x 28 handgun under the driver's seat. The handgun was loaded with twenty rounds of ammunition capable of penetrating bullet-proof vests.

After his indictment, Lumpkins moved to suppress the drugs and firearm recovered from the vehicle, arguing that the search was not valid under any exception to the Fourth Amendment. The district court denied the motion on each of several alternative grounds, including that Konecny validly consented to the search. Lumpkins subsequently pled guilty pursuant to a written plea agreement, conditioned on his right to pursue this appeal.

When reviewing the denial of a motion to suppress, we review "the district court's findings of fact for clear error and its determinations of probable cause and

reasonable suspicion *de novo*." *United States v. Robinson*, 664 F.3d 701, 703 (8th Cir. 2011).

Lumpkins contends that the warrantless search of the vehicle was not justified under any exceptions to the Fourth Amendment warrant requirement.[2] We disagree and hold that the search was valid pursuant to the consent obtained from Konecny. "[A] vehicle search pursuant to voluntary consent from a third party with authority over the vehicle does not violate the Fourth Amendment." *United States v. Chavez Loya*, 528 F.3d 546, 554 (8th Cir. 2008).

The rental contract for the vehicle stated, "If Renter fails to return the vehicle . . . within 24 hours following . . . oral demand . . . Renter will be deemed to be in unlawful possession of the vehicle." It is undisputed that Budget personnel contacted Hughes and made an oral demand for the return of the vehicle on January 31; thus, by February 3, the day of the search, Hughes's possession was in violation of the agreement. The rental agreement further provided that "[t]he vehicle may be repossessed . . . without notice if it . . . is used in violation of law or of this agreement." Therefore, when Konecny arrived as a representative of Budget, she had the authority to take immediate custody of the vehicle and to give valid consent to a search of the vehicle.

---

[2]The parties dispute whether Lumpkins had a reasonable expectation of privacy in the vehicle so as to confer standing to challenge the search. While Lumpkins, who was not listed as an authorized driver on the rental agreement, had permission from Hughes to use the vehicle, *cf. United States v. Best*, 135 F.3d 1223, 1225 (8th Cir. 1998); *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995) (per curiam), by February 3 Hughes's own authorization arguably had been revoked. For purposes of our analysis, we assume without deciding that Lumpkins had standing to challenge the search.

Lumpkins, relying on *Georgia v. Randolph*, 547 U.S. 103 (2006), argues that Konecny's consent to the search was invalid in the face of contemporaneous refusals of consent from Hughes and Lumpkins. *See id.* at 122-23 (holding that "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant"). It is not clear that *Randolph*, which involved a search of a residence, applies in the context of a vehicle search. *See id.* at 115 (relying on the "centuries-old principle of respect for the privacy of the home" and noting that "it is beyond dispute that the home is entitled to special protection as the center of the private lives of our people" (quotations omitted)); *cf. Chavez Loya*, 528 F.3d at 555 (citing *Rakas v. Illinois*, 439 U.S. 128, 148 (1978) ("We have on numerous occasions pointed out that cars are not to be treated identically with houses or [a]partments for Fourth Amendment purposes.")). In any event, neither Lumpkins nor Hughes would qualify as a "fellow occupant," *Randolph*, 547 U.S. at 123, of the vehicle for purposes of *Randolph* after Konecny arrived to repossess it. There is no "commonly held understanding" in society that a driver of an overdue rental car, on notice that the rental car company is entitled to repossess its vehicle at any time, nevertheless may exercise authority over the vehicle contrary to the repossessor's. *See id.* at 111.

Because consent for the search was validly obtained, the warrantless search of the vehicle did not violate the Fourth Amendment. *See Chavez Loya*, 528 F.3d at 554.[3]

Additionally, while Lumpkins does not dispute that the traffic stop to investigate his illegally tinted windows was valid, he argues that his nearly immediate detention and placement in handcuffs constituted an arrest without probable cause. The district court rejected this argument, finding that Lumpkins was not under arrest

---

[3]Because we find the warrantless search valid on the basis of consent, we need not address the alternative theories advanced by the Government to justify the search.

at the time of his initial detention and that the detention was "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). However, we need not decide the question of whether Lumpkins's initial detention violated the Fourth Amendment. Even assuming that it did, we have held in similar circumstances that, where consent to search a vehicle is validly obtained, a preceding illegal seizure and detention of another vehicle occupant is "independent and separate from the discovery of" contraband in the vehicle. *United States v. Green*, 275 F.3d 694, 700 (8th Cir. 2001). That rule applies here because Konecny, like the consenting vehicle occupant in *Green*, gave authoritative consent to the search of the vehicle. Thus, "the discovery of drugs [and a firearm] in the car is not a 'fruit' of [Lumpkins's] illegal detention" and suppression of that evidence is not warranted. *See id.* at 699.

Finally, Lumpkins challenges the application of the career-offender provisions of U.S.S.G. § 4B1.1 to the calculation of his advisory sentencing guidelines range. However, Lumpkins's plea agreement "expressly waives his right to appeal his sentence . . . on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence." Moreover, the plea agreement specifies that "a misapplication of the Sentencing Guidelines" is not an "illegal sentence" for purposes of the waiver. We can identify nothing in the record to suggest that this waiver was unknowing, involuntary, or would result in a miscarriage of justice. *See United States v. Birbragher*, 603 F.3d 478, 491 (8th Cir. 2010). Accordingly, we enforce Lumpkins's waiver of the right to appeal his sentence, and we decline to reach the merits of his § 4B1.1 claim. *See id.* at 492.

For the foregoing reasons, we affirm the denial of the motion to suppress and the sentence pronounced by the district court.

_____