

**NUMBER 13-11-00701-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**THE STATE OF TEXAS,**                                                               **Appellant,**

**v.**

**SHIRLEY COPELAND,**                                                               **Appellee.**

---

**On appeal from the County Court at Law No. 1
of Victoria County, Texas.**

---

# O P I N I O N

**Before Chief Justice Valdez and Justices Garza and Vela
Opinion by Chief Justice Valdez**

The State appeals from the trial court's granting of a motion to suppress filed by appellee, Shirley Copeland. We affirm.

## I. BACKGROUND

The trial court's findings of fact provide the following background. On March 18, 2011, Deputy Jesse Garza was on routine patrol. He had received information from neighbors that people were frequently coming and going from a house located on

Coleto Drive in Victoria County, Texas. Deputy Garza parked his patrol car down the street from the house with his lights off to observe the house. Depurty Garza noticed a vehicle arrive at the house, stay for a few minutes and then drive away. Deputy Garza followed the car. At the corner of Royal Oak and Coleto Drive, the car did not signal a turn or come to a complete stop at the stop sign.

Deputy Garza effected a traffic stop for the violations of failure to signal and failure to stop at a stop sign. Deputy Garza contacted the driver, Wayne Danish, and asked him to step out of the vehicle. The vehicle was registered to the driver. After some preliminary questions about where the driver had been and where he was going, Deputy Garza asked for permission to search the vehicle. The driver consented.

The passenger, appellee, asserted that she was the driver's common law spouse. The driver made the same assertion. Then, appellee, who was still sitting in the passenger seat, unequivocally refused permission to search the vehicle. Deputy Garza again requested permission from the driver. The driver consented, but appellee continued to protest.

The deputy then searched the vehicle. During his search of the vehicle, the deputy recovered two pills identified as Tramadol, a prescription drug, which were located in the middle console underneath some papers. Appellee was arrested and charged by information with the offense of possession of a dangerous drug, a Class A misdemeanor. *See* TEX. HEALTH & SAFETY CODE ANN. § 483.041 (West 2010).

In its conclusions of law, the trial court stated in relevant part:

1.    [Appellee] has standing to challenge the search because she had a possessory interest in the vehicle as community property of the common law marriage between Wayne Danish and [appellee].

2

2. There was probable cause to stop the vehicle based on the traffic violations that the Deputy observed.

3. There was no probable cause to search the vehicle.

4. [Appellee] clearly and without ambiguity denied consent to search the vehicle.

5. [Appellee] had equal authority to grant or refuse consent to search the vehicle as per *Georgia v. Randolph*, 547 U.S. 103, 114-115 (2005) and *State v. Bassano*, 827 S.W.2d 557, 560 (Tex. App.— Corpus Christi 1992, pet. ref'd).

6. When two people have authority to consent or refuse a search and both are present, the refusal by one such person negates the consent of the other.

7. Deputy Garza did not have consent to search the vehicle, therefore his search of the vehicle without probable cause or consent violated the Fourth Amendment of the U.S. Constitution and Article 1, Section 9 of the Texas Constitution.

## II. ANALYSIS

By three issues, the State contends that the trial court erred in granting appellee's motion to suppress.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress for abuse of discretion, using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). Generally, with respect to a suppression ruling, the trial court's findings of historical fact supported by the record, as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor, are given "almost total deference." *Guzman*, 955 S.W.2d at 89. A de novo standard is applied to a trial court's determination of the law and its application of law to the facts that do not turn upon an evaluation of credibility and

3

demeanor.  *Id.*  We will uphold a trial court's ruling on a motion to suppress if the ruling is reasonably supported by the record, and the ruling is correct under any theory of law applicable to the case.  *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

**B.      Applicable Law**

The Fourth Amendment protects individuals against unreasonable searches and seizures.  U.S. CONST. amend. IV.  Consent to search is "one of a few well-delineated exceptions" to the warrant requirement.  *See Johnson v. State*, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007).  To establish the reasonableness of a search, the State is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.  *See United States v. Matlock*, 415 U.S. 164, 171 (1974).

The Supreme Court's reasoning in *Matlock* has been extended to apply to consensual vehicle searches.  *See Welch v. State*, 93 S.W.3d 50, 52 (Tex. Crim. App. 2002) (applying [*Matlock*'s] "less common variation of . . . third-party consent" in context of vehicle search); *see also United States v. Harris*, 526 F.3d 1334, 1339 (11th Cir. 2008) (same).  Specifically, a third party's consent is valid if he has mutual use of the property, with joint access to or control of the area for most purposes.  *Harris*, 526 F.3d at 1339; *see also United States v. Loya*, 528 F.3d 546, 554 (8th Cir. 2008) ("Consistent with the notion of common authority as defined by the Supreme Court in *Matlock*, a passenger may have common authority to consent to a full search of a vehicle."); *Houston v. State*, 286 S.W.3d 604, 609 (Tex. App.—Beaumont 2009, pet. ref'd) ("[T]he

voluntary consent of a third party to a search of property under joint control is valid against the defendant.").

**C.    Discussion**

*1.  Common-Law Marriage*

In its first issue, the State contends that the trial court erred in concluding that a common-law marriage existed between appellee and the driver of the vehicle, who was the registered owner of the vehicle.  The parties agree on the three elements of a common-law marriage:  (1) an agreement to be husband and wife; (2) living together as husband and wife; and (3) a holding out to the public that the couple are husband and wife.  *See Hightower v. State*, 629 S.W.2d 920, 924 (Tex. Crim. App. 1981).  The State concedes the third element, but it maintains that the record does not support the first and second elements.

At the outset of the hearing, the parties agreed to "a stipulation that this was a warrantless arrest and search," which according to the trial court, "puts the burden on the State."  The State made no objection to assuming the burden and told the trial court, "[T]he State will prove that the owner-driver of the vehicle was present, that the vehicle was registered to that owner-driver, not to the [appellee] in this case, that there was no evidence of a common-law marriage, that the parties had different last names."

The State then called Deputy Garza as the only witness to testify at the hearing.  According to his testimony, the fact that the driver and passenger of the vehicle had different last names was the only basis he had for questioning the existence of their common-law marriage.  He told the trial court that he had no other "way of knowing whether that's true or not based on a traffic stop."

5

Based on the foregoing, it was reasonable for the trial court to accept the testimony given by Deputy Garza, to rely on that as evidence of a common-law marriage, and to reject the State's contention that there was no common law marriage for the stated reason that the couple had different last names. *See Hereford v. State*, 339 S.W.3d 111, 118 (Tex. Crim. App. 2011) ("In its review, the appellate court does not perform its own fact-finding mission, but limits the scope of its factual review to determining whether the trial court's findings were reasonable in light of the evidence presented. If these findings are reasonable, the appellate court must defer to the trial court."); *Manzi v. State*, 88 S.W.3d 240, 243 (Tex. Crim. App. 2002) ("[A]ppellate courts should review a trial court's determination of historical facts under a deferential standard, even if that determination was not based upon an evaluation of credibility and demeanor.").

The State's first issue is overruled.

*2. Standing*

In its second issue, the State contends that appellee has no standing to challenge the search. *See Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004) ("Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded."). The State argues that appellee has no standing to challenge the legality of the search because she was merely a passenger in the vehicle. *See United States v. Spotted Elk*, 548 F.3d 641, 657 (8th Cir. 2008) ("The general rule is that a person has no reasonable expectation of privacy in an automobile belonging to another."); *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000) (holding

6

appellant suffered "no infringement of any right ensuring freedom from unreasonable searches and seizures" where "appellant claims no possessory interest in the vehicle itself or in those items seized from within it").

This contention is insupportable given that: (1) the trial court specifically found that appellee had a possessory interest in the vehicle based on her common-law marriage; and (2) we have overruled the State's first issue challenging the trial court's conclusion that a common-law marriage existed between appellee and the driver of the vehicle, who was the registered owner of the vehicle. *See Jones v. State*, 119 S.W.3d 766, 787 (Tex. Crim. App. 2003) (stating that in order to demonstrate standing, the passenger must show that he has some possessory interest in the car, "or otherwise had a reasonable expectation of privacy in it"); *Matthews v. State*, 165 S.W.3d 104, 112 (Tex. App.—Fort Worth 2005, no pet.) (stating that a defendant "has standing to challenge the search of a car he does not own if he shows that he gained possession of the car from the owner with the owner's consent or from someone authorized to give permission to drive it"). As such, the issue is overruled without further discussion. *See* TEX. R. APP. P. 47.1.

### 3. Validity of Consent

In its third issue, the State contends that the trial court erred in granting the motion to suppress. As noted above, the trial court concluded that appellee, as the common-law wife of the registered owner of the vehicle, "had equal authority to grant or refuse consent to search the vehicle as per *Georgia v. Randolph*, 547 U.S. 103, 114-115 (2005) and *State v. Bassano*, 827 S.W.2d 557, 560 (Tex. App.—Corpus Christi 1992, pet. ref'd)." The trial court ruled that appellee's refusal to grant permission for the

search negated the driver and owner's consent. On appeal, the State argues that this was error.

In *Randolph*, as the State points out, the United States Supreme Court "granted certiorari to resolve a split of authority on whether one occupant may give law enforcement effective consent to search shared premises, as against a co-tenant who is present and states a refusal to permit the search." *Randolph*, 547 U.S. at 108. The Court held that "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." *Id*. 122-23.

The decision in *Randolph* rested on "the centuries-old principle of respect for the privacy of the home," with the Supreme Court observing that "it is beyond dispute that the home is entitled to special protection as the center of the private lives of our people." *Id*. at 115. The fundamental expectation of privacy in the home was the cornerstone of the Supreme Court's decision: "We have, after all, lived our whole national history with an understanding of the ancient adage that a man's home is his castle to the point that the poorest man may in his cottage bid defiance to all the forces of the Crown." *Id*. (internal quotation marks and citations omitted).

It is clear that the Supreme Court's decision in *Randolph* was inseparable from its context involving the search of a home, and as the Court has observed, "[o]ne's expectation of privacy in an automobile and of freedom in its operation are significantly different from the traditional expectation of privacy and freedom in one's residence." *Rakas v. Illinois*, 439 U.S. 128, 149 n.15 (1978). The Supreme Court has emphasized that "cars are not to be treated identically with houses or apartments for Fourth

8

Amendment purposes." *Id.* at 148. "[T]he privacy interests in an automobile are constitutionally protected; however, . . . the ready mobility of the automobile justifies a lesser degree of protection of those interests." *California v. Carney*, 471 U.S. 386, 390 (1985).

Based on the foregoing, the State contends that the holding in *Randolph* is inapplicable in the context of a jointly occupied vehicle. *See Loya*, 528 F.3d at 555 ("assuming [but not deciding] *Randolph* is applicable in the context of a jointly occupied vehicle"). Central to the State's argument is the assertion that, as a mere passenger in the vehicle who was not married to the registered owner of the vehicle, appellee had no expectation of privacy for purposes of the Fourth Amendment. This proposition is untenable because we have already rejected the State's assertion that appellee was a mere passenger in the vehicle and not married to the registered owner of the vehicle. What remains is the question of *Randolph*'s applicability.

At least one Texas court of appeals has applied *Randolph* in the context of a vehicle search. *See Houston*, 286 S.W.3d at 609. In *Houston*, the driver of a vehicle consented to a police search. *Id.* at 611. The owner of the vehicle, who was a passenger at the time, remained silent and did not contest the consent given by the driver. *Id.* The Beaumont Court of Appeals held that the driver's consent was valid based on her care, custody, and control of the vehicle. *Id.* at 610. Next, the court observed that the appellant, "as a passenger in the vehicle, had standing to contest the search and a reasonable expectation of privacy." *Id.* at 611. Citing *Randolph*, the court upheld the lawfulness of the search, explaining: "Because the consent was not disputed by [appellant] when the search occurred, the search did not violate the Fourth

9

Amendment." *Id.* at 611-12. The holding suggests that the outcome of the case may have been different if the appellant had disputed the consent to search, as appellee did in this case. *See Houston*, 286 S.W.3d at 609 ("Voluntary consent given by a third party is not valid as to the defendant if the defendant is also present and expressly refuses to consent."); s*ee also Harris*, 526 F.3d at 1339 ("[T]he extension of the prohibition on warrantless searches applies only to defendants who are present and actually express a refusal to consent.").

This brings us to the decision of the Texas Court of Criminal Appeals in *Welch*. *See Welch*, 93 S.W.3d at 52. In *Welch*, which was decided in 2002, roughly four years before *Randolph*, there was a search based on consent given by a passenger after the driver and owner of the vehicle had been arrested:

> [The police officer] approached [the passenger], told her that [the driver and owner of the vehicle] was being arrested, gave her the keys to the truck, and asked for consent to search. [The passenger] gave consent. In the cab of the truck, [the officer] found two burnt marijuana cigarettes and in [owner's] purse he found a vial of methamphetamine. In the bed of the truck, inside a green military-style bag, he found a methamphetamine recipe and various ingredients and supplies used to make methamphetamine.

*Id*. at 51. The owner of the vehicle filed a motion to suppress, which was denied by the trial court. On appeal, the Court of Criminal Appeals decided the case in favor of the State, citing *Matlock* for the validity of the third-party consent:

> Under *Matlock*, third-party consent is valid if the third party has mutual access and control over the property searched and if it can be said that the defendant assumed the risk that the third party would consent to a search. We hold this rule applies even when the defendant is present at the scene and does not consent to a search.

*Id*.

A superficial reading of the two cases—*Randolph* on the one hand, which involved the search of a home, and *Welch* on the other hand, which involved the search of a vehicle—might suggest that *Welch* is controlling here because this case involves the search of a vehicle. This conclusion might be defended by the fact that the holding in *Randolph* was so heavily influenced by the longstanding protection given to the fundamental right of privacy in the home  *See Carroll v. United States*, 267 U.S. 132, 153 (1925) ("[The] guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."). Yet, we believe this conclusion is incorrect because the decisions can be harmonized quite easily.

For purposes of our analysis, *Matlock* makes all the difference. *Matlock* involved the search of a home and recognized the validity of third-party consent to a search. *See Matlock*, 415 U.S. at 171. In *Welch*, the Court of Criminal Appeals applied *Matlock* to the context of a vehicle search. *See Welch*, 93 S.W.3d at 51. As a further refinement of the *Matlock* precedent, *Welch* instructs us that *Randolph* is also applicable in the context of a vehicle search. This was certainly the conclusion reached by the Beaumont Court of Appeals in *Houston*. *See Houston*, 286 S.W.3d at 609

11

("Voluntary consent given by a third party is not valid as to the defendant if the defendant is also present and expressly refuses to consent.").

In sum, we conclude that it was not error for the trial court to conclude that appellee's refusal to grant permission for the search negated the consent given by her common-law husband, who was the registered owner of the vehicle.

The State's issue is overruled.

### III. CONCLUSION

The order of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
9th day of August, 2012.