

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NO. PD-1340-12

**THE STATE OF TEXAS**

**v.**

**SHIRLEY COPELAND, Appellee**

## ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE THIRTEENTH COURT OF APPEALS
## VICTORIA COUNTY

ALCALA, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined. MEYERS, J., filed a dissenting opinion.

## O P I N I O N

Is a vehicle a mobile "castle" so that passengers are treated the same as tenants who may disallow police to search a residence after a fellow tenant has consented to the search? Concluding that it is not, we decline to extend the holding in *Georgia v. Randolph*, 547 U.S. 103, 123 (2006), from residences to vehicles. Because the trial court applied *Randolph* to vehicles, the court of appeals erred by upholding the suppression ruling on that basis. *See*

*State v. Copeland*, 380 S.W.3d 214, 216 (Tex. App.—Corpus Christi 2012). We reverse and remand the case to the court of appeals.

## I. Background

Deputy Jesse Garza of the Victoria County Sheriff's Office was observing a house known for illegal-narcotics activity. He saw a sports-utility vehicle ("SUV") approach the house and observed a passenger, Shirley Copeland, appellee, get out of the SUV, leave the deputy's sight, and quickly return to the SUV. After the SUV left the house, the deputy stopped the driver of the SUV for a traffic violation.

Suspecting possible narcotics activity, the deputy asked the driver, Wayne Danish, for consent to search the SUV. Danish agreed, but appellee refused. She claimed to be the owner of the SUV even though she was not listed as the owner on the vehicle registration. Appellee and Danish also informed the deputy that they were married under common law. Although appellee continued to refuse consent, Danish again consented, and the deputy searched the SUV.

During his search, the deputy found two white pills, later identified as Tramadol, in the middle console. Appellee claimed that she was holding the pills for a friend. Appellee was arrested and charged with possession of a dangerous drug, a Class A Misdemeanor. TEX. HEALTH & SAFETY CODE § 483.041.

Appellee filed a motion to suppress on two grounds. First, she argued that the deputy's extended detention of her was not permissible under *Terry v. Ohio*, 392 U.S. 1 (1968)

because it was not reasonably related in scope to the circumstances that justified the stop or necessary to dispelling any reasonable suspicion that developed during the stop. Second, she argued that *Randolph* applies to the search of vehicles just as it does to the search of residences.[1] *See Randolph*, 547 U.S. at 121-23. The trial court's order generally granted the motion, but its findings of fact and conclusions of law addressed only the second ground. The trial court's findings of fact determined that the deputy had observed the vehicle stay at a house for a few minutes; the vehicle committed a traffic violation; the driver consented to the search; the passenger refused consent; the vehicle was registered to the driver; the two

---

[1]     The second ground in appellee's motion to suppress stated,

> Further, if the extended detention was justified there still was not probable cause to conduct a search. When there is not probable cause an officer may search if there is a voluntary consent to search. Consent is not valid even when consent is given by a person with authority to consent when there is a contemporaneous refusal by a person who is physically present for the search and who shares equal authority with the person who authorized the search. *Georgia v. Randolph*, 547 U.S. 103, 123 (2006); *State v. Bassano*, 827 S.W.2d 557, 560 (Tex. App.—Corpus Christi, 1992, pet. ref.) (husband had reasonable expectation of privacy in search or car registered to his wife).
> In the present case evidence will show that husband and wife were traveling in the vehicle that was stopped by the Victoria County Sheriff's Department. No probable cause existed to search the vehicle and thus law enforcement sought consent to search from the husband. Husband granted consent. Law enforcement attempted to get consent from Defendant, the wife, and Defendant refused consent when she shared equal authority to consent to search their vehicle.
> Therefore, any tangible evidence seized in connection with this search and seizure, including but not limited to the item listed above, was seized unlawfully and should be suppressed.

We note that the only basis of her second ground, therefore, is the application of *Randolph* to vehicular searches. *See Randolph*, 547 U.S. at 123. *Bassano* concerned an appellant's standing to challenge a search rather than an appellant's authority to refuse consent to search. *State v. Bassano*, 827 S.W.2d 557, 560 (Tex. App.—Corpus Christi 1992, pet. ref'd). Although the State challenged appellee's standing in its petition for discretionary review, we did not grant review on that ground.

occupants asserted they were common-law married; and the deputy recovered the two pills. The trial court's conclusions of law stated that appellee had standing to challenge the search; the deputy had probable cause to stop the vehicle due to the traffic offense; there was no probable cause for the search; and the deputy did not have consent to search the vehicle under *Randolph* because appellee, who had equal authority to grant or refuse consent, denied consent to search the vehicle. The trial court concluded that "[w]hen two people have authority to consent or refuse a search and both are present, the refusal by one such person negates the consent of the other." The trial court's findings of fact and conclusions of law were silent as to whether the detention was extended or exceeded the scope of the stop, which was the basis of appellee's first ground in her motion to suppress.

The State appealed. In its three issues, it complained (1) that the trial court erred by finding that appellee and the driver were married under common law, (2) that appellee had standing to challenge the search, and (3) that the police officer did have valid consent through the driver. Ruling in favor of appellee on all three issues, the court of appeals affirmed. *Copeland*, 380 S.W.3d at 216.[2] Because it held in appellee's favor, the court of

---

[2] This is a case of first impression for this Court. The federal courts and other state appellate courts have not squarely addressed whether *Randolph*'s rule for residential searches extends to vehicular searches. *See, e.g.*, *United States v. Lumpkins*, 687 F.3d 1011, 1014 (8th Cir. 2012) ("It is not clear that *Randolph*, which involved a search of a residence, applies in the context of a vehicle search."); *United States v. Chavez-Loya*, 528 F.3d 546, 555 (8th Cir. 2008) (assuming without deciding that *Randolph* applies to vehicle searches, but noting that court had "on numerous occasions pointed out that cars are not to be treated identically with houses . . . for Fourth Amendment purposes") (quoting *Rakas v. Illinois*, 439 U.S. 128, 148 (1978)); *United States v. Murphy*, 516 F.3d 1117, 1124 (9th Cir. 2008) (upholding applicability of *Randolph* to shared storage unit and noting that "there is no reason that the rule in *Randolph* should be limited to residences" because *Randolph* is rooted in "idea of common authority"); *United States v. Henderson*, 536 F.3d 776, 785 (7th Cir.

appeals did not reach the first alternative ground in appellee's motion to suppress with respect to the length or scope of the detention. The sole ground on which we granted review in the State's petition for discretionary review challenges the court of appeals's application of *Randolph* to consensual searches of vehicles stopped on a public roadway.[3] *See id*. We declined to review the State's ground challenging whether an assertion of common-law marriage suffices to establish standing. We agree with the State that *Randolph* does not apply to vehicular searches and, therefore, reverse the judgment of the court of appeals. We remand the case to that court so that it may determine whether the trial court's ruling on the motion to suppress must be upheld on the alternative ground asserted in appellee's motion.[4]

---

2008) (noting that *Randolph* narrowly limited to "circumstances of the case"). Resolution of these disputed-consent cases has turned on factors other than the applicability of *Randolph* to vehicular searches. *See*, *e.g.*, *United States v. Delancy*, 502 F.3d 1297, 1307-1308 (11th Cir. 2007) (not reaching *Randolph* disputed-consent question because undisputed that consenting party, as owner, had greater authority to consent than defendant); *United States v. Harris*, 526 F.3d 1334, 1338-39 (11th Cir. 2008) (avoiding *Randolph* disputed-consent question by determining that no passenger expressly objected to the search); *United States v. Botchway*, 433 F. Supp. 2d 163, 169 (D. Mass. 2006) (same); *United States v. Sandoval-Espana*, 459 F. Supp. 2d 121, 135-36 (D.R.I. 2006) ("Mendez's position [as non-owner of the vehicle] is thus not congruent with the co-occupant in *Randolph*, who consistently retained and asserted his authority over the premises; therefore, Mendez is unable to gain the benefit of the Court's 'disputed consent' rule."); *Pitchford v. State*, 45 So. 3d 216, 241 (Miss. 2010) (finding defendant did not withdraw consent); *State v. Kurokawa-Lasciak,* 278 P.3d 38, 41 (Or. Ct. App. 2012), *review denied*, 290 P.3d 814 (Or. 2012) (avoiding federal question by resolving issue on state grounds); *but see State v. Lowe*, 812 N.W.2d 554, 576-77 (Iowa 2012) (applying *Randolph* to mobile-home search).

[3]    The State's sole ground on which we granted review asks, "If a trial court can assume standing after a mere claim of common-law marriage, then is the consent to conduct a warrantless search of a vehicle pulled over on the side of the road given by the physically present driver and registered owner valid in the face of refusal by the passenger?"

[4]    Appellee's motion to suppress asserted two grounds: (1) the stop constituted a *Terry* violation, and (2) her refusal to consent prohibited the search under *Randolph*. *See Terry v. Ohio*, 392 U.S. at 30; *Randolph*, 547 U.S. at 121. We do not address the first ground because (1) it is not

## II. Validity of Third-Party Consent to Search of Vehicle in Presence of Objector

We address the principles that underlie third-party consent before addressing the reasons that *Randolph* is inapplicable to searches of vehicles.

### A. Background Principles That Underlie Third-Party Consent

The Supreme Court first recognized the "co-occupant consent rule" in *United States v. Matlock.* 415 U.S. 164, 171 (1974). It held that "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Id.* The rationale for permitting third-party consent rests on "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 171 n.7. *Matlock* explained that a third party's "common authority" would not be "limited by the law of

a ground in the petition before us, (2) the court of appeals did not address it, and (3) resolution of the matter requires further analysis with respect to whether the State has forfeited any challenge to this alternative ground by failing to challenge it on appeal; whether the trial court intended for its general order to be limited to only the ground covered by the findings of fact and conclusions rendered, which pertained to only the *Randolph* ground; or whether some other disposition, such as abatement, is necessary to determine the trial court's intent with respect to its ruling. *See, e.g., State v. Mendoza*, 365 S.W.3d 666, 670 (Tex. Crim. App. 2012) (when trial court renders findings of fact that are insufficient to resolve legal issue, appellate court may either presume that trial court made all implied findings that are supported by the record and consistent with its legal ruling or may remand to trial court to make additional or more specific findings).

property" and may be "broader than the rights accorded by property law." *See Randolph,* 547 U.S. at 110.

*Matlock*'s holding addresses third-party consent by a co-tenant whose fellow tenant is absent when the consent is given. *Matlock*, 415 U.S. at 170. "[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *Id.*

In contrast to *Matlock*, which held that a co-tenant's consent is "good against 'the absent, nonconsenting'" tenant, *Randolph* addresses a co-tenant's consent in the presence of a nonconsenting fellow tenant. *Randolph*, 547 U.S. at 121 (citing *Matlock*, 415 U.S. at 170). In *Randolph*, the Supreme Court held that a warrantless search of a shared dwelling over the express refusal of consent by a physically present resident cannot be justified as reasonable as to that resident on the basis of consent given by another resident. *Id.* at 122-23.

The reason for the opposing conclusions in *Matlock* and *Randolph* stems from an examination of the "social expectations" that arise under those two scenarios. *Id.* at 111. In *Randolph*, the Supreme Court explained, "The constant element in assessing Fourth Amendment reasonableness in the consent cases, then, is the great significance given to widely shared social expectations, which are naturally enough influenced by the law of property, but not controlled by its rules." *Id.* In the case of a co-tenant who is alone, these shared social expectations include the understanding that any of the co-tenants "may admit visitors, with the consequence that a guest obnoxious to one may nevertheless be admitted

in his absence by another." *Id*.

By contrast, in the case of a co-tenant whose fellow tenant is present and objecting to a visitor's entry into the home, these shared social expectations would require exclusion of the visitor. *Id*. at 114. The Court explained that it would not be sensible for a caller at the door of the shared premises to go inside a house when a fellow tenant stood there saying "stay out." *Id*. at 113. Under these circumstances, the consent of one co-tenant would not permit entry in the face of the express objection of another tenant. *Id*. at 113-14. The Court summarized that "there is no common understanding that one co-tenant generally has a right or authority to prevail over the express wishes of another, whether the issue is the color of the curtains or invitations to outsiders." *Id*. at 114. "Since the co-tenant wishing to open the door to a third party has no recognized authority in law or societal practice to prevail over a present and objecting co-tenant, his disputed invitation, without more, gives a police officer no better claim to reasonableness in entering than the officer would have in the absence of any consent at all." *Id*.

The generally recognized different social expectations for the two scenarios explains the contrasting outcomes where one third-party search is permitted in the case of the absent co-tenant, and another third-party search is disallowed in the case of the present, objecting co-tenant. *Compare id. with Matlock*, 415 U.S. at 170-71. But the general expectations may be different in the case of a recognized hierarchy. The Court explained that, "[u]nless the people living together fall within some recognized hierarchy, like a household of parent and

child . . . , there is no societal understanding of superior and inferior." *Randolph*, 547 U.S. at 114. The Court, therefore, recognized that different societal expectations may arise when co-tenants belong to a recognized hierarchy. *Id*.

**B. *Randolph* is Inapplicable to Vehicles**

**1. Social Expectations For Vehicle Occupants Unlike Tenants**

We conclude that the principle that underlies *Randolph* weighs against the treatment of vehicles as mobile "castles." Unlike homes occupied by general co-tenants, society does generally recognize a hierarchy with respect to the occupants of a vehicle. The driver is the person who has the superior right. For example, a police officer arresting a driver usually asks him, alone, whether he wants his vehicle towed or released to another person. And it is the driver who receives a traffic citation. A bus driver has a responsibility to maintain the safety of his passengers. A sensible would-be passenger wanting a ride would likely accept an offer from a driver even in the presence of an objecting passenger because a driver exclusively controls the destination. As the person with the exclusive control over the operation of the vehicle, a driver necessarily is placed in a superior role with respect to the society within the vehicle.[5] The passengers of the vehicle become subservient to his control. Like the hierarchy of parent and child, to which *Randolph* would not apply, *Randolph* would

---

[5]     Society also seems to generally recognize a preference for the front seat over the back seat. Teenagers shout "shotgun" for the right to "call it." Perhaps it is the proximity to the controls on the stereo or air conditioning, although newer model vehicles also usually have these in the back compartment, too. In any event, the placement of occupants in a vehicle generally tends to signify a social order and hierarchy.

not apply to the hierarchy that generally applies to a driver and passenger of a vehicle during the ordinary course of travels.

At first blush, this would seem to suggest that, as long as a law-enforcement officer has the consent of a driver, no other consent is necessary or pertinent. But that is not necessarily so in all cases. After a vehicle is stopped on a public roadway, events may transpire that change the positions of the occupants in the hierarchy of the vehicle and that would likely change society's expectations with respect to which occupant controls the vehicle. For example, the driver may be arrested and he may thereafter permit a passenger to take control of his vehicle. *See*, *e.g.*, *Welch v. State*, 93 S.W.3d 50, 53 (Tex. Crim. App. 2002). The officer may learn that the driver is operating the car with the permission of the passenger, whose family owns the car. *See*, *e.g.*, *Houston v. State*, 286 S.W.3d 604, 611 (Tex. App.—Beaumont 2009, pet. ref'd). Or a police officer's further investigation at the scene may reveal that a passenger is the owner of the vehicle and all its contents, and that the driver is merely a chauffeur.[6] Events like these would likely change society's expectations to

---

[6]     This situation arose in *Maxwell v. State*, 73 S.W.3d 278, 280 (Tex. Crim. App. 2002). A Beaumont police officer stopped a tractor-trailer rig driven by Claude Dawkins for a traffic violation. *Maxwell*, 73 S.W.3d at 280. Maxwell, his passenger, owned the vehicle, rented the rig, and employed Dawkins as the driver. *Id.* Dawkins consented to the search. *Id.* After obtaining consent, the officer seized almost 500 pounds of marijuana from within the rig. *Id.* Maxwell filed a motion to suppress alleging that Dawkins lacked authority to consent to the search because Maxwell had greater authority than him. *Id.* Maxwell argued that because Dawkins was his employee and because Maxwell was present at the scene, Dawkins lacked authority to consent to the search. *Id.* This Court determined that Dawkins had the right to consent to the search because his employment as the driver gave him mutual use and control of the rig while he was driving it. *Id.* at 281. This Court stated, "Appellant's ownership and presence, without some affirmative act on his part to show a refusal to consent to the search or to withdraw Dawkins' authority, did not serve to diminish this control." *Id.* at 282. This Court's decision in *Maxwell* preceded *Randolph*. Furthermore, this Court did not reach

include consideration of a passenger's control over the vehicle as equal, and possibly superior, to that of the driver. These types of fluid events that may occur during a traffic stop make a decision about who, other than the driver, might control a vehicle unlike the more stagnant inquiry of a tenant who answers the door at a residence. In *Randolph*, the Supreme Court considered the clarity of the determination to be made by an officer in light of an easily identifiable tenant at a residence. *Id*. at 111. It observed that if Mrs. Graff answered "the door of a domestic dwelling with a baby at her hip," that alone was enough "to tell a law enforcement officer or any other visitor that if she occupies the place along with others, she probably lives there subject to the assumption tenants usually make about their common authority when they share quarters." *Id*. But telltale signs like a baby at a mother's hip will be absent in light of seatbelt laws for vehicles. Because of these differences between homes and vehicles, social expectations about vehicles include the recognition that a driver's control may quickly and unexpectedly be relegated to another as circumstances change. The mobility of the vehicle, fluidity of circumstances, and rapidity with which decisions must be made make it unreasonable to expect a police officer to assess the social expectations for each of the case-by-case determinations about who may override a driver's control.

Perhaps more importantly, *Matlock* and *Randolph* did not intend to formulate a case-by-case rule that depended on fact-specific inquiries. *See Randolph*, 547 U.S. at 112. "*Matlock* relied on what was usual and placed no burden on the police to eliminate the

---

the question presented in *Randolph* because the owner of the vehicle failed to do any affirmative act constituting an objection to the consent that was granted by the driver. *See id.*

possibility of atypical arrangements, in the absence of reason to doubt that the regular scheme was in place." *Id*. As discussed in more detail above, other than the general observation that a driver is the hierarch of a vehicle as it ordinarily travels along a road, a "regular scheme" with respect to vehicles is difficult to ascertain after the stage of tendering of driver's licence and insurance. The fluid nature of traffic stops and the lack of clarity about the relationship of the passengers to the driver make the social expectations described in *Randolph* inapplicable to vehicles.

We also note that, although a search of a vehicle "is a substantial invasion of privacy," it is "significantly less than that relating to one's home or office." *See United State v. Ortiz*, 422 U.S. 891, 896 (1975); *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976). Vehicles are "not to be treated identically with houses" for Fourth Amendment purposes. *Rakas v. Illinois*, 439 U.S. 128, 148 (1978). In *Randolph*, the Supreme Court seemed to be particularly concerned with the elevated privacy interest in residences in observing that "the home is entitled to special protection as the center of the private lives of our people." *See Randolph*, 547 U.S. at 115 (internal citations and quotations omitted). Society's lessened expectation of privacy in vehicles as compared to homes further supports the conclusion that *Randolph*'s holding should not be extended to vehicular searches.

Furthermore, *Randolph*'s holding expressly drew a "fine line" and was intended to affect only those co-tenants who were physically present at the threshold and expressly refused consent. *Id*. at 121-22. *Randolph*'s narrow holding would not have applied to

Matlock, who was not present to object but was in a squad car not far away, or to Rodriguez, who was asleep in the apartment when his co-tenant consented. *Id*. (citing *Matlock*, 415 U.S. at 179, and *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990)). Extending *Randolph* to vehicles would be contrary to the Supreme Court's intent in construing this narrow holding aimed at protecting those individuals who stand at the threshold of their homes objecting to a governmental intrusion. *Randolph*, 547 U.S. at 121-22. Because the Supreme Court did not extend the holding in *Randolph* to those people who were nearby or inside the home but not at the threshold, it appears that the Court intended to limit its holding to the narrowly drawn parameters of a residential search. *See id*. at 121.

### 2. Court of Appeals's Analysis Unpersuasive

The court of appeals concluded that, because this Court applied the third-party-consent principles from *Matlock* to a case involving vehicular searches in *Welch v. State*, the residential-consent requirements in *Randolph* must necessarily apply to vehicles. *See Copeland*, 380 S.W.3d at 220 (citing *Welch*, 93 S.W.3d at 53).[7] In making this broad

---

[7]     In *Welch*, the driver, Welch, was stopped for speeding and refused consent to the search of her truck. *Welch v. State*, 93 S.W.3d 50, 53 (Tex. Crim. App. 2002). After she was arrested on an outstanding warrant, she asked the police officer to release her truck to her passenger. *Id*. Her passenger then consented to the search. *Id*. The officer found methamphetamine in the truck and charged Welch with possessing with intent to deliver it. *Id*. This Court explained that, when Welch and her passenger were driving down the road, the two friends had joint access to the truck but not joint control. *Id*. Welch, as both owner and driver, had control over the vehicle at that time. *Id*. While the passenger may have had control over certain portions of the truck, such as her window or her seat, she did not have equal control over the vehicle for most purposes. *Id*. After the officer arrested Welch, however, the dynamic changed when Welch asked the officer to give the truck to her passenger, whose status rose to that of one having joint access and control over the truck for most purposes. *Id*. "She was able to drive the truck, to freely examine its contents, and to allow someone else to do so, including a police officer." *Id*. This Court determined that the passenger had joint

generalization, the court failed to consider the underlying rationales for those decisions. As discussed in more detail above, it does not appear that the Supreme Court intended for *Randolph* to apply to vehicles because the social expectations for occupants of vehicles are unlike co-tenants in residences; people have a lessened expectation of privacy in vehicles as compared to residences; and *Randolph* was intended to narrowly apply only to the present, objecting co-tenant in a residence.

As further support for its holding, the court of appeals cited *Houston v. State*. *Id.* (citing *Houston*, 286 S.W.3d at 609-11). Without any analysis or explanation about why *Randolph* should apply to vehicular searches, the *Houston* court of appeals simply cited to *Randolph* and stated, "Voluntary consent given by a third party is not valid as to the defendant if the defendant is also present and expressly refuses consent." *Houston*, 286 S.W.3d at 609. Perhaps it found that a more detailed analysis was unnecessary in light of its

---

access and control over the truck for most purposes at the time she granted consent and that Welch assumed the risk that the passenger would consent to a search when she gave the truck to the passenger. *Id*. We explained,

> In line with *Matlock*, we have stated that, in order for a third person to validly consent to a search, that person must have equal control and equal use of the property searched. And we have recently emphasized that the third party's legal property interest is not dispositive in determining whether he has the authority to consent to a search, saying that "common authority derives from the mutual use of the property, not the ownership or lack thereof."

*Id.* at 52-53 (quoting *Maxwell*, 73 S.W.3d at 281). The Court rejected the contention that Welch's ownership in the truck gave her a superior privacy interest in the truck that rendered the passenger's consent invalid in the face of Welch's refusal. *Id*. at 53-54. Because *Randolph* does not apply to vehicular searches, *Welch*'s discussion and application of *Maxwell* to vehicular searches remains the prevailing law for determining whether a third-party consent to a vehicular search is valid. *See id*.

holding that, "[b]ecause the consent was not disputed by Houston when the search occurred, the search did not violate the Fourth Amendment." *Id*. at 611-12.  Even if *Randolph* applied to vehicles, it did not apply in that case under the facts, which showed that Houston had not expressly refused his consent to the search to which the driver had agreed. *See id*.  Because the *Houston* court's reliance on *Randolph* failed to include any analysis regarding *Randolph*'s applicability to vehicles, and because its reference to *Randolph* was non-binding dicta that did not affect the disposition of the case, the court of appeals in this case erred by relying on it as its authority for finding that *Randolph* applied to this case.  *See Copeland*, 380 S.W.3d at 220 (citing *Houston*, 286 S.W.3d at 609-11).

### III.  Conclusion

We conclude that the holding in *Randolph* does not apply to vehicular searches and that those searches are controlled by pre-existing law. We reverse the judgment of the court of appeals and remand the case to that court for proceedings consistent with this opinion.

Delivered:  May 8, 2013

Publish