**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00074-CR**

_____

**AARON WILSON MCCLELLAND, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 128th District Court**
**Orange County, Texas**
**Trial Cause No. A230136-R**

**MEMORANDUM OPINION**

In two issues, Appellant Aaron Wilson McClelland complains the trial court erred by denying his Motions to Suppress his involuntary statements to police and the controlled substances found during a warrantless search of his trailer. For the reasons explained below, we affirm the trial court's judgment.

Background

A grand jury indicted McClelland for felony possession of a controlled substance, namely methamphetamine. *See* Tex. Health & Safety Code Ann. §

1

481.115(d). McClelland filed a Motion to Suppress Statements, arguing that his statements to police were involuntary, coerced, and enticed. McClelland argued the admission of his statements violated his federal and state constitutional rights and articles 1.05 and 38.23 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. arts. 1.05, 38.23. McClelland maintained that he was deprived of his right to counsel, did not make an intelligent and knowing waiver of that right, was not apprised of his *Miranda* rights, and that his statements were involuntarily due to a lack of sleep. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

McClelland also filed a Motion to Suppress Evidence, complaining that officers violated his Fourth Amendment right against an unreasonable search and seizure by entering his trailer without permission or a search warrant. McClelland argued the evidence should be suppressed under article 38.23 of the Texas Code of Criminal Procedure because it was the product of an illegal search.

During the hearing on McClelland's Motions, McClelland agreed that after his arrest, he gave a statement to Detective Nicholas Medina, but explained that he did not do so voluntarily because he felt coerced when Medina told him everyone at his trailer would be charged if he did not make a statement. McClelland also testified that he did not give the police permission to search his trailer. The trial court reviewed the video recording of his statement.

2

On cross-examination, McClelland agreed he initialed and signed the first page of his Voluntary Statement, which states he knowingly, intelligently, and voluntarily waived his *Miranda* rights, and signed the second page, which states the methamphetamine located in the trailer was his. McClelland agreed that during the 15-minute video Medina told him multiple times that he did not have to give a statement. McClelland also agreed that Medina told him that everyone in the trailer was in possession of the narcotics and that if somebody did not take responsibility, everyone would be arrested and a jury would have to figure it out. McClelland testified that "[M.B.] had nothing to do with the drugs."

Detective Medina of the Orange Police Department testified that when he brought McClelland into the interview room, he gave him an opportunity to read his *Miranda* warnings and then asked if he understood and waived them, and McClelland answered both questions in the affirmative. Medina testified that he knew who resided in the trailer where the methamphetamine was found, and he explained that when multiple people have care, custody, and control of narcotics, there is probable cause to arrest everyone if nobody takes responsibility. Medina believed that he had probable cause to arrest everyone at the trailer. Medina agreed the video showed McClelland made some statements prior to receiving his *Miranda* warnings, and that after he gave McClelland those warnings, he asked McClelland to make a written statement to ensure nothing improper was used against him.

3

Medina testified that during the interview, he did not stand up, bow up, make fists, shout, or threaten to hurt McClelland, nor did anyone else. Medina stated he gave McClelland multiple opportunities to terminate the interview. On cross-examination, Medina testified he was not at the trailer during the search but received information that M.B. and C.B. were inside the trailer.

Detective Joseph Charles Steele of the Orange Police Department testified that he arrested McClelland for outstanding warrants while he was walking his dogs at his trailer park. When he arrested McClelland, Steele knew that C.B. and McClelland both resided at the trailer, and he explained that when he and two other detectives returned McClelland's dogs to the trailer, he met C.B. and noticed a strong odor of marijuana coming from the trailer. Steele testified when he asked about the smell, C.B. invited them inside the trailer, opened a kitchen drawer, and retrieved a bag of what he believed to be marijuana. At that point, Steele explained Sergeant Laughlin asked C.B. for consent to search the trailer, and C.B. granted consent. Steele believed he had probable cause to search the trailer based on the discovery of the marijuana. Steele testified that during the search, Laughlin found a bag of a clear crystal-like substance that they believed to be methamphetamine. On cross-examination, Steele explained he did not get a search warrant to search the trailer because C.B. gave them permission.

At the close of the hearing, McClelland argued that Medina's threats to arrest M.B. when she was not involved with the methamphetamines were coercive and violated *Miranda* and article 38.22. *See* Tex. Code Crim. Proc. Ann. art. 38.22. The State argued that in determining the coercive nature of Medina's statements, the trial court could consider the video, which shows the calm and non-threatening behavior of the officers; the short duration of the interview; that *Miranda* warnings were given and waived; the context of the statements; Medina's knowledge that they had probable cause to arrest everyone in the trailer who had care, custody, and control could be arrested if nobody claimed ownership of the narcotics; and that McClelland had numerous opportunities to terminate the interview. According to the State, the record shows there was no coercive action by any officer and that McClelland's statement was voluntary and admissible. The State also argued that the search of the trailer was based on the voluntary consent of a resident of the trailer.

The trial court denied McClelland's Motions to Suppress and proceeded to trial. A jury found McClelland guilty of felony possession of a controlled substance and assessed his punishment at seventy-five years of confinement.

Analysis

In issue one, McClelland complains the trial court erred by denying his Motion to Suppress his statements because they were coerced, involuntary and given

5

under duress. McClelland argues that his involuntary statements cannot be used against him. *See id*. 38.21, 38.22.

At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, and a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (quoting *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). In the absence of any findings of fact, either because none were requested or because none were made by the trial court, an appellate court must presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (citing *Ross*, 32 S.W.3d at 856-57).

"We review a trial court's ruling on a motion to suppress using a bifurcated standard for an abuse of discretion." *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023). "We defer to a trial court's findings of fact that are supported by the record." *Id*. We review de novo legal questions and mixed questions that do not turn on credibility and demeanor, such as the facts of a case that would establish probable cause. *Ross*, 32 S.W.3d at 856. The evidence and all reasonable inferences are viewed in the light most favorable to the trial court's ruling, and the trial court's ruling must be upheld if it is reasonably supported by the record and is correct under

6

a theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

Under article 38.21, "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed." Tex. Code Crim. Proc. Ann. art. 38.21. Similarly, article 38.22, which is aimed at protecting suspects from police overreaching, provides that statements, whether or not they are the product of custodial interrogation, may be admitted so long as they are voluntary. *Oursbourn v. State*, 259 S.W.3d 159, 171-72 (Tex. Crim. App. 2008) (citations omitted); *see* Tex. Code Crim. Proc. Ann. art. 38.22, § 6. A statement can be deemed involuntary and, therefore, inadmissible under three different theories: (1) violation of the Due Process Clause; (2) failure to comply with *Miranda*, as expanded in article 38.22, sections 2 and 3; and (3) general involuntariness under article 38.22, section 6. *See Oursbourn*, 259 S.W.3d at 169; *see also* Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2, 3, 6. Here, McClelland's claim is based on alleged police overreach, so the threshold question is whether the police objectively engaged in coercive tactics. *See Lopez v. State*, 610 S.W.3d 487, 496 (Tex. Crim. App. 2020). We review claims of involuntariness under the Due Process Clause and articles 38.21 and 38.22 by examining the totality of the circumstances surrounding the confession. *See id.* at 494.

To prevail on his involuntary confession claim, McClelland must show (1) that police engaged in activity that was objectively coercive, (2) his statement is causally related to the coercive police conduct, and (3) the coercion overbore his will. *Id.* (citations omitted). Attempting to make this showing, McClelland relies on Medina's threat that everyone in the trailer would be arrested. Police statements concerning threats to arrest others can constitute objective coercive conduct depending on the facts of the case, including the context in which the statements were made, the demeanor of the person who made them, and the truth or falsity of the statements. *See id.* at 496.

The video of McClelland's confession shows that after he was given *Miranda* warnings, he waived his rights and voluntarily confessed that the methamphetamines found in the trailer were his. The video does not support McClelland's complaint that his statements were made under duress or coercion. As noted above, the interview was less than fifteen minutes long, the officers were not forceful or coercive, and the officer taking McClelland's statement repeatedly told him he did not have to give a statement. Although Medina advised McClelland that he could arrest everyone in the trailer for the offense if nobody claimed ownership of the methamphetamines, Medina's actions did not amount to police overreaching or coercive police activity that would support a claim of involuntariness. *See id.* at 496-97; *Oursbourn*, 259 S.W.3d at 169-71.

8

Viewing the totality of the circumstances surrounding McClelland's confession, we conclude McClelland's statements during the interview were voluntary under the Due Process Clause and articles 38.21 and 38.22. *See Lopez*, 610 S.W.3d at 494, 499. Accordingly, the trial court did not abuse its discretion by denying McClelland's Motion to Suppress his statements. We overrule issue one.

In issue two, McClelland complains the trial court erred by denying his Motion to Suppress the results of the warrantless search, which lacked probable cause. McClelland argues the search was not based on consent because the record is silent concerning C.B.'s authority to consent to the search and whether C.B. had equal control over the trailer.

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. CONST. amend. IV; *see also Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). "The entry into a residence by police officers is a 'search' for purposes of the Fourth Amendment." *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011) (citing *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010)). A warrantless police entry into a residence is presumptively unreasonable subject to a few specifically defined and well-established exceptions. *Id.*; *Jackson v. State*, 468 S.W.3d 189, 194 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

"Consent searches are an established exception to the warrant and probable cause requirements of the Fourth Amendment." *Balentine v. State*, 71 S.W.3d 763, 772 (Tex. Crim. App. 2002) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)). A third party can consent to a search to the detriment of another's privacy interest if she has actual authority over the place to be searched. *State v. Rodriguez*, 521 S.W.3d 1, 19 (Tex. Crim. App. 2017) (citations omitted). A third party may give valid consent to a search when she and the absent, non-consenting person share "common authority" over the premises or property. *Id.*; *Limon*, 340 S.W.3d at 756. "Common authority is shown by mutual use of the property by persons generally having joint access or control for most purposes." *Rodriguez*, 521 S.W.3d at 19. "With joint access and control, it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in [her] own right and that the others have assumed the risk that one of their numbers might permit the common area to be searched." *Id.* (citing *Limon*, 340 S.W.3d at 756).

In the absence of actual authority, consent may be validly obtained from an individual with apparent authority over the premises. *Id.* "Apparent authority is judged under an objective standard: 'Would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?'" *Id.* (quoting *Limon*, 340 S.W.3d at 756). "Reasonableness hinges on 'widely shared social expectations' and 'commonly held

10

understanding about the authority that co-inhabitants may exercise in ways that affect each other's interest.'" *Id.* at 19-20 (citing *Georgia v. Randolph*, 547 U.S. 103, 111 (2006); *State v. Copeland*, 399 S.W.3d 159, 163 (Tex. Crim. App. 2013)).

"The State must prove actual or apparent authority by a preponderance of the evidence." *Limon*, 340 S.W.3d at 757. On appeal, we review the trial court's determinations of actual and apparent authority de novo as mixed questions of law and fact. *Id.* In the absence of findings of fact, we view the evidence in the light most favorable to the trial court's rulings and assume that the trial court resolved any issues of historical fact or credibility consistently with its ultimate ruling. *Id.* (citation omitted).

The record shows that at the time of the search, Steele had reason to believe C.B. had the right to consent to the search. *See Rodriguez*, 521 S.W.3d at 19; *see also Limon*, 340 S.W.3d at 756-57. During the suppression hearing, Steele testified that based on previous investigations and contacts with C.B. in the community, he knew C.B. to reside with McClelland in the trailer. Steele explained that C.B. gave Sergeant Laughlin consent to search the trailer. Based on this record, we conclude that a person of reasonable caution would believe, under the circumstances, that C.B. had apparent authority over the trailer, and that Steele validly received consent to search the trailer. Accordingly, the trial court did not err by denying McClelland's

11

Motion to Suppress the results of the warrantless search. We overrule issue two.

Having overruled both of McClelland's issues, we affirm the trial court's judgment.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on June 27, 2025
Opinion Delivered August 13, 2025
Do Not Publish

Before Johnson, Wright and Chambers, JJ.