

NUMBER 13-11-00701-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**THE STATE OF TEXAS,**                                             **Appellant,**

**v.**

**SHIRLEY COPELAND,**                                             **Appellee.**

## On appeal from the County Court at Law No. 1 of Victoria County, Texas.

## MEMORANDUM OPINION ON REMAND

**Before Chief Justice Valdez and Justices Garza and Longoria**
**Memorandum Opinion on Remand by Chief Justice Valdez**

This interlocutory appeal by the State challenging the trial court's order granting a motion to suppress filed by appellee, Shirley Copeland, is before this Court on remand from the Texas Court of Criminal Appeals. *See State v. Copeland*, 380 S.W.3d 214 (Tex. App.—Corpus Christi 2012), *rev'd & remanded*, 399 S.W.3d 159, 162 (Tex. Crim.

App. 2013).  For the reasons set forth below, we conclude that the State failed to meet its burden to prove the reasonableness of the warrantless vehicular search that led to the discovery of the suppressed evidence because it procedurally defaulted on an essential element of a consensual search, the only legal theory it offered to establish the reasonableness of the search.  *See Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex. Crim. App. 2002).  Specifically, the State failed to argue, prove, or purport to prove that the consent was granted freely and voluntarily.  *See Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985) (en banc).  Furthermore, on appeal, the State has inadequately briefed, and thus waived, the issue of whether the trial court erred in failing to find that the consent was granted freely and voluntarily.  *See* TEX. R. APP. P. 38.1(i).  Accordingly, we conclude that the trial court's order must be affirmed based on the State's procedural default.

## I. BACKGROUND[1]

Deputy Jesse Garza of the Victoria County Sheriff's Department observed Copeland approach a known drug house that he had under clandestine surveillance and watched her temporarily disappear from his sight before returning to the passenger seat of the sports-utility vehicle ("SUV") in which she was traveling.  He tailed the SUV in his police cruiser until he observed the driver commit two traffic violations by failing to signal a lane change and failing to come to a complete stop at a stop sign.  At that point, he initiated a traffic stop.[2]

---

[1]  The following facts are taken from the clerk's record and the reporter's record of the hearing on the motion to suppress at which Deputy Jesse Garza was the sole witness.

[2]  A police officer may lawfully stop a motorist who commits a traffic violation.  *See McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993).

When both vehicles had come to a stop, Deputy Garza ran the license plates of the SUV and learned that Wayne Danish was the registered owner. Deputy Garza then walked up to the driver's side window, made contact with the driver, Wayne Danish, and directed him to step out of the SUV. Danish complied.

After Danish exited the SUV, Deputy Garza instructed him to stand behind the SUV, so that he would be in front of the police cruiser. He then informed Danish of the reason for the traffic stop. He asked Danish where "he was coming from," and Danish said from a "friend's house." He asked Danish where he was going, and Danish said to "Wal-Mart." According to Deputy Garza, he saw no "signs that . . . [Danish] had been using drugs or anything of that nature," and he knew Danish did not have any outstanding warrants. Nevertheless, Deputy Garza did not write a ticket, issue a warning, or let Danish go because, in his opinion, "[t]he story didn't make no sense."

Deputy Garza then left Danish detained behind the SUV and walked over to the passenger side of the vehicle, where he made contact with Copeland, who was still sitting in the front passenger seat. He "got her side of the story, where they were coming from." She said they were coming "from a friend's house." According to Deputy Garza, Copeland identified her friend as "Rhino" or Raymond Hollander and she indicated that Deputy Garza had "heard about [his house] . . . before." According to Deputy Garza, Copeland said something to the effect that it was not a "good" place. At that point, Deputy Garza asked if there was anything illegal inside the SUV, but Copeland said no.

3

Still suspicious, Deputy Garza walked back over to Danish and asked him for consent to search the SUV, which Danish granted.[3] Deputy Garza did not state whether he advised Danish that he had the right to refuse consent. Deputy Garza then asked for consent to search Danish's person, which Danish granted. Again, Deputy Garza did not state whether he advised Danish that he had the right to refuse consent. Searching Danish's person, Deputy Garza found "a large sum of money," about "a thousand dollars." Danish explained that he had just cashed a check.

After searching Danish, Deputy Garza approached Copeland and "asked her to step out" of the SUV. "At first she was going to . . . , [but] [t]hen she stopped and stated that she didn't want to." After that, she "stated she wasn't giving . . . [Deputy Garza] consent." At that point, Deputy Garza "advised her that . . . [Danish] was giving . . . [him] consent, he was the registered owner." Deputy Garza then asked her again to step out of the vehicle, and this time, she complied. Deputy Garza did not indicate where she was being detained at that point. She continued arguing with him, "saying she's not giving . . . [him] consent." Consequently, Deputy Garza "ran the license plate again so she could hear it because she was stating to . . . [him] that she was the owner." Deputy Garza did not indicate whether Copeland was in the police cruiser at that time, but that is where he was when he previously "ran the license plate." According to Deputy Garza, Copeland was close enough to the police radio to hear the dispatcher confirm that Danish was the registered owner of the SUV.

As before, Deputy Garza continued to keep Copeland and Danish physically separated. It is unclear who had the keys to the SUV at that point, but according to

---

[3] "Consent searches are an established exception to the warrant and probable cause requirements of the Fourth Amendment." *Balentine v. State*, 71 S.W.3d 763, 772 (Tex. Crim. App. 2002).

4

Deputy Garza, Danish and Copeland were not free to leave. Deputy Garza walked back over to Danish and asked him, "Are you still giving me consent?" Danish said yes. Again, Deputy Garza did not state whether he advised Danish that he had the right to refuse to consent. The record reflects that Deputy Garza knew that Danish and Copeland were married (because both Copeland and Danish had told him that they were married), that Copeland was claiming ownership of the SUV (as Danish's wife), and that she was purporting to veto the consent granted by Danish. However, Deputy Garza determined that Danish had superior authority to grant consent because he was the registered owner and driver of the SUV and because he was "still" purporting to grant consent over his wife's protests.

Roughly twenty minutes after pulling over the SUV, Deputy Garza initiated a search and discovered in the center console of the vehicle two white pills later identified as Tramadol, a "dangerous drug." *See* TEX. HEALTH & SAFETY CODE ANN. § 483.001(2) (West 2010). According to Deputy Garza, Copeland subsequently admitted that she was holding the pills for a friend. She was then arrested. Deputy Garza issued Danish a warning for his traffic violations and released him from the detention.

Copeland was later charged with class A misdemeanor possession of a controlled substance. *See id.* § 483.041(a), (d) (West 2010). Her attorney filed a motion to suppress the evidence of the two pills. *See* TEX. CODE CRIM. PROC. ANN. art. 28.01, § 6 (West 2006). In the motion, her attorney asserted two alternative grounds for relief: (1) Deputy Garza's extended detention of her was unlawful under *Terry v. Ohio*, 392 U.S. 1, 30 (1968); and (2) her refusal to consent prohibited the search of the SUV under *Georgia v. Randolph*, 47 U.S. 103, 121 (2005)*.*

5

The trial court held an evidentiary hearing on the motion to suppress. At the outset of the hearing, the State stipulated that it had the burden of proof because this was a case involving a warrantless search and seizure. The State announced that it would prove that the traffic stop was valid, that the extended detention was justified, and that the search was lawful based on Danish's consent. As indicated above, Deputy Garza was the sole witness, and he gave the testimony reflected in this opinion.

In its closing argument, the State asserted that Copeland had no standing to challenge the lawfulness of the search. According to the State, Copeland had failed to prove the existence of a valid common law marriage such that she had a possessory interest in the SUV. The State also argued, in the alternative, that the search was lawful because Danish gave valid consent. The State maintained that Copeland's refusal to grant consent was essentially irrelevant. According to the State, Danish had the superior authority to grant or refuse consent because, as the registered owner and driver of the SUV, he was "the captain" of the vehicle. The State failed to assert in its closing argument that Danish's consent was voluntary.[4] The State's closing argument also failed to address the lawfulness of the detention, though it conceded in its opening statement that the detention was "extended."[5]

---

[4] In her opening statement, counsel for the State said that Deputy Garza had asked for "voluntary" consent, but that remark was the only reference she made to the voluntariness of the consent during the entire hearing. She did not mention the voluntariness of the consent at all during her closing argument.

[5] In her opening statement, counsel for the State told the trial court the following:

[T]he State will show that the detention did not last longer than the time required for this officer, a diligent officer, to accomplish the objective purpose of the stop and that the simple fact that it was a vehicle stop in and of itself created exigent circumstances that warranted an extended detention.

6

During his closing argument, Copeland's attorney argued both grounds for relief raised in the motion. With respect to the first ground, he told the trial court the following:

> I would say that Terry versus Ohio . . . tells the Court that [twenty minutes] . . . is an unreasonable amount of time to detain somebody when they don't have any alcohol on their breath, they don't have any drug activity that's in plain view, they don't have any warrants, nothing out of the normal, and he confirmed and the Court can judge it at its will, going to Wal-Mart if you're a shift worker is not uncommon at 1:00 o'clock in the morning.

With respect to the second ground, counsel argued that Copeland had standing to challenge the lawfulness of the search because the evidence proved that she and Danish had a common law marriage. Counsel argued that Copeland had a reasonable expectation of privacy with regard to the SUV. Counsel argued further that Copeland's physical presence, assertion of her ownership and possessory interests in the SUV, and refusal to grant consent obviated any consent given by Danish. In support of his argument, counsel cited *Randolph*, 547 U.S. at 114–15 and *State v. Bassano*, 827 S.W.2d 557, 560 (Tex. App.—Corpus Christi 1992, pet. ref'd).

In its rebuttal, the State pointed out that these cases involved houses, not cars. The State argued that because cars are not castles, the consent rule announced in *Randolph* did not apply to this case. The State then reiterated its no-standing argument and rested.

The trial court ruled from the bench as follows:

> All right. After listening to the evidence that's been presented at this hearing and as well considering the authorities presented by counsel, the Court first finds that this Defendant, Shirley Copeland, did have standing to object to the search of the vehicle as she had a possessory interest in the vehicle as a common-law spouse of the owner of the vehicle. The Court also then finds that the Defendant's refusal to grant permission for the search obviated the driver and owner's consent, and thus the search was unreasonable under the requirements of the Fourth Amendment of

7

the United States Constitution. Therefore, I'm going to grant the Defendant's motion to suppress. . . .

Thereafter, the trial court issued a general order granting Copeland's motion to suppress without stating the grounds for the ruling. Subsequently, on the State's request, the trial court entered findings of fact and conclusions of law in support of its order suppressing the evidence of the pills. *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) ("[T]he trial court must make findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts.").

The trial court's findings of fact provide as follows:

1. On March 18, 2011, Deputy Jesse Garza was on routine patrol. He had received information from neighbors that people were frequently coming and going from a house located on Coleto Drive in Victoria County, Texas.

2. Deputy Garza parked his patrol car down the street from the house with his lights off to observe the house.

3. Deputy Garza noticed a vehicle arrive at the house, stay for a few minutes and then drive away.

4. Deputy Garza followed the car. At the corner of Royal Oak and Coleto Drive the car did not signal a turn or come to a complete stop at the stop sign.

5. Deputy Garza effected a traffic stop for the violations of failure to signal a turn and failure to stop at a stop sign.

6. Deputy Garza contacted the driver, Wayne Danish, and asked him to step out of the vehicle.

7. The vehicle was registered to the driver.

8. After some preliminary questions about where the driver had been and where he was going, Deputy Garza asked for permission to search the vehicle. The driver consented.

8

9. The passenger, identified as Shirely Copeland, the defendant, asserted that she was the driver's common law spouse. The driver made the same assertion. There was no evidence to the contrary presented at the hearing.

10. The passenger then unequivocally refused permission to search the vehicle.

11. Deputy Garza then requested permission again from the driver. The driver consented.

12. The Deputy then searched the vehicle. During his search of the vehicle, the Deputy recovered two pills identified as Tramadol, a prescription drug.

13. The Defendant was arrested and charged by information with the offense of Possession of a Dangerous Drug, a Class A misdemeanor as per Texas Health and Safety Code § 483.041.

The trial court's conclusions of law provide as follows:

1. [Copeland] has standing to challenge the search because she had a possessory interest in the vehicle as community property of the common law marriage between Wayne Danish and [Copeland].

2. There was probable cause to stop the vehicle based on the traffic violations that the Deputy observed.

3. There was no probable cause to search the vehicle.

4. [Copeland] clearly and without ambiguity denied consent to search the vehicle.

5. [Copeland] had equal authority to grant or refuse consent to search the vehicle as per *Georgia v. Randolph*, 547 U.S. 103, 114–115 (2005) and *State v. Bassano*, 827 S.W.2d 557, 560 (Tex. App.—Corpus Christi 1992, pet. ref'd).

6. When two people have authority to consent or refuse a search and both are present, the refusal by one such person negates the consent of the other.

7. Deputy Garza did not have consent to search the vehicle, therefore his search of the vehicle without probable cause or consent violated the Fourth Amendment of the U.S. Constitution and Article 1, Section 9 of the Texas Constitution.

9

8. In accordance with Article 38.23 of the Texas Code of Criminal Procedure, the evidence of the two Tramadol pills is inadmissible.

The trial court's findings of fact and conclusions of law did not expressly address the first ground asserted in Copeland's motion (i.e., that Deputy Garza's extended detention of her was unlawful because it was not reasonably related in scope to the circumstances that justified the stop or necessary to dispel any reasonable suspicion that developed during the stop).[6] The State did not object to the trial court's failure to issue findings of fact and conclusions of law addressing the lawfulness of the extended detention. *See* TEX. R. APP. P. 33.1(a). As to the second ground, the trial court found that Danish gave consent twice, but it did not find that Danish granted the consent freely or voluntarily.

Subsequently, the State filed this interlocutory appeal. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West Supp. 2012). The State raised three issues: (1) the trial court erred by finding that Danish and Copeland had a common law marriage; (2) Copeland lacked standing to challenge the search; and (3) the trial court erred in granting the motion to suppress because Deputy Garza had valid consent from Danish. *See Copeland*, 380 S.W.3d at 216. We overruled the State's issues and affirmed the trial court's suppression of the evidence. *See id.* at 217–21. Specifically, we held that the trial court did not err in ruling that (1) a common law marriage existed between Danish and Copeland, (2) Copeland had standing to challenge the search of the SUV,

---

[6] *See Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."); *id.* at 29 ("[E]vidence may not be introduced if it was discovered by means of a seizure and search which were not reasonably related in scope to the justification for their initiation."); *Balentine v. State*, 71 S.W.3d 763, 770 (Tex. Crim. App. 2002) ("An investigative detention must be temporary and the questioning must last no longer than is necessary to effectuate the purpose of the stop."); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) ("The same standards will apply whether the person detained is a pedestrian or is the occupant of an automobile."); *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App.1997) ("Texas courts require reasonable suspicion before a seizure of the person or property can occur.").

10

and (3) the search of the SUV was unlawful because Copeland refused to give consent. *See id.* (quoting *Randolph*, 547 U.S. at 123 ("Consent is not valid even when consent is given by a person with authority to consent when there is a contemporaneous refusal by a person who is physically present for the search and who shares equal authority with the person who authorized the search.")).

Thereafter, the State filed a petition for discretionary review with the Texas Court of Criminal Appeals. The State raised two grounds in its petition:

1. Was it proper for the trial court to assume that … [Copeland] had standing based off a claim of common-law marriage?

2. If a trial court can assume standing after a mere claim of common-law marriage, then is the consent to conduct a warrantless search of a vehicle pulled over on the side of the road given by the physically present driver and registered owner valid in the face of refusal by the passenger?

The Court granted the State's petition for discretionary review on the second ground. *See Copeland*, 399 S.W.3d at 162 n.3. The Court declined to review the State's first ground. *See id.* at 162.

In its opinion, the Court explained that the consent rule announced in *Randolph* does not apply to vehicular searches. *See id.* The Court endorsed the cars-are-not-castles doctrine asserted by the State in its closing argument at the hearing on the motion to suppress. According to the Court, a vehicle is not "a mobile 'castle' so that passengers are treated the same as tenants who may disallow police to search a residence after a fellow tenant has consented to the search." *Id.* at 159.

The Court reasoned that "[u]nlike homes occupied by general co-tenants, society does generally recognize a hierarchy with respect to the occupants of a vehicle." *Id.* at 164. According to the Court, "[t]he driver is the person who has the superior right." *Id.*

11

The Court observed that "[a]s the person with the exclusive control over the operation of the vehicle, a driver necessarily is placed in a superior role with respect to the society within the vehicle." *Id.* Thus, the Court explained, "[t]he passengers of the vehicle become subservient to his control." *Id.* Finally, the Court concluded that "[t]he fluid nature of traffic stops and the lack of clarity about the relationship of the passengers to the driver make the social expectations described in *Randolph* inapplicable to vehicles." *Id.* at 165. Based on the foregoing, the Court decided "that the holding in *Randolph* does not apply to vehicular searches." *Id.* at 167. "Because the trial court applied *Randolph* to vehicles," the Court held that we erred in "upholding the suppression ruling on that basis." *Id.* at 160. The Court remanded the case for this Court to decide the State's third issue based on "pre-existing law." *Id.* at 167.

## II. ANALYSIS

In its third issue, the State contends that the trial court erred in granting the motion to suppress because the search of the vehicle was consensual.

### A. Standard of Review

"We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion." *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). "In this review we give almost total deference to the trial court's determination of historical facts and review the court's application of search and seizure law de novo." *Id.* (citing *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997)).

"In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). "Accordingly, the judge may believe

or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted." *Id.* "This is so because it is the trial court that observes first hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record." *Id.* "When a trial court makes explicit fact findings, the appellate court determines whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

"Whether we infer the fact findings or consider express findings, we uphold the trial court's ruling under any applicable theory of law supported by the facts of the case." *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013). "Similarly, regardless of whether the trial court has made express conclusions of law, we uphold the trial court's ruling under any theory supported by the facts because an appellate court reviews conclusions of law de novo." *Id.* "Even if the trial court had limited its conclusion of law to a particular legal theory, an appellate court would not be required to defer to that theory under its de novo review." *Id.* This "rule holds true even if the trial court gave the wrong reason for its ruling." *Armendariz v. State*, 123 S.W.3d 401, 403 (Tex. Crim. App. 2003).[7]

## B. Applicable Law

Article One, Section Nine of the Constitution of the State of Texas provides as follows:

---

[7] Under the right-ruling, wrong-reason doctrine—also known as the *Calloway* rule—we uphold a ruling on any alternate "theory of law applicable to the case," regardless of whether the trial court gave a different or wrong reason and regardless of whether the appellee expressly relied upon it at trial. *See State v. Esparza*, No. PD-1873-11, slip opinion, page 9, n.17, __ S.W.3d __ (Tex. Crim. App. Oct. 30, 2013) (citing *Calloway v. State*, 743 S.W.2d 645, 651–52 (Tex. Crim. App. 1988)). In a recent decision, the Texas Court of Criminal Appeals observed that, in the context of this specific case, "there [is] nothing to prohibit the court of appeals from relying upon that jurisprudence [referring to the *Calloway* rule] to affirm the trial court's judgment on remand." *Id.* at 17 n.34.

13

The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

TEX. CONST. art. I, § 9.

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. "This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." *Terry*, 392 U.S. at 8–9. "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Id.* at 9 (quoting *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891)).

"The Fourth Amendment protects people, not places." *Id.* (quotations omitted). "[W]herever an individual may harbor a reasonable expectation of privacy, he is entitled to be free from unreasonable governmental intrusion." *Id.* (citation omitted). "Of course, the specific content and incidents of this right must be shaped by the context in which it is asserted." *Id.* "For what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Id.*

"Ever since its inception, the rule excluding evidence seized in violation of the Fourth Amendment has been recognized as a principal mode of discouraging lawless police conduct." *Id.* at 12. "[E]xperience has taught that . . . [the exclusionary rule] is

14

the only effective deterrent to police misconduct in the criminal context, and that without it the constitutional guarantee against unreasonable searches and seizures would be a mere form of words." *Id.* (quotations omitted). "The rule also serves another vital function—the imperative of judicial integrity." *Id.* (quotations omitted). "Courts which sit under our Constitution cannot and will not be made party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions." *Id.* "Thus in our system evidentiary rulings provide the context in which the judicial process of inclusion and exclusion approves some conduct as comporting with constitutional guarantees and disapproves other actions by state agents." *Id.* "A ruling admitting evidence in a criminal trial, we recognize, has the necessary effect of legitimizing the conduct which produced the evidence, while an application of the exclusionary rule withholds the constitutional imprimatur." *Id.*

The trial court applied the Fourth Amendment's exclusionary rule, as well as the statutory analog ennacted by the Texas Legislature in the Texas Code of Criminal Procedure, which provides in relevant part as follows:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West Supp. 2012).

## C. Burden of Proof

As noted above, at the hearing on the motion to suppress, the State stipulated that this case involved a warrantless search and seizure. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) ("To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that

15

rebuts the presumption of proper police conduct. A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.") (footnotes omitted). Therefore, the burden of proof shifted to the State to establish that the search and seizure were reasonable. *See id.*

## D. Consensual Search

In this case, the State asserts that the search was reasonable on the sole theory that it was consensual. Accordingly, we confine our analysis to whether the search was consensual. *See* TEX. R. APP. P. 47.1.

Voluntary consent is a "recognized exception" to the Fourth Amendment and Article One, Section Nine of the Texas Constitution. *Welch v. State*, 93 S.W.3d 50, 57 (Tex. Crim. App. 2002). It is well settled that before consent is deemed effective, the State must prove by clear and convincing evidence that the consent was freely and voluntarily given. *See Meeks*, 692 S.W.2d at 509. "[V]oluntariness is a question of fact to be determined from all the circumstances." *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (quotations omitted). "In order to be valid, the consent must not be coerced, by explicit or implicit means, by implied threat or covert force." *Id.* (quotations omitted). "By the same token, consent is not established by showing no more than acquiescence to a claim of lawful authority." *Id.* (quotations omitted). "[A]lthough not dispositive, [the] subject's knowledge of right to refuse consent is one factor to be taken into account when considering voluntariness." *Id.* at 332–33 (citation omitted). The ultimate issue is whether based on the totality of the circumstances, "a reasonable person would . . . have felt they had the choice to withhold consent to search." *Id.* at 333. "[W]e are mindful that while most confrontations with the police are

16

uncomfortable—given the implicit difficulty in refusing any request from a peace officer who stands cloaked in the authority of law enforcement—the Constitution does not guarantee freedom from discomfort." *Id.* (quotations omitted). Thus, we focus on whether under the totality of the circumstances, "a reasonable person [would] . . . conclude that the . . . search . . . was . . . optional." *Id.*

## E. Procedural Default

As set forth above, to establish its consensual-search theory at the hearing on the motion to suppress, the State had the burden to prove that Danish granted consent and that he did so freely and voluntarily. *See Meeks*, 692 S.W.2d at 509. However, at the hearing, the State failed to argue that Danish granted consent freely and voluntarily.[8] *See Kelly*, 204 S.W.3d at 819 ("[The] party with the burden of proof assumes the risk of non[-]persuasion."). Therefore, it procedurally defaulted on that point. *See State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) (en banc) ("[I]n cases in which the State is the party appealing, the basic principle of appellate jurisprudence that points not argued at trial are deemed to be waived applies equally to the State and the defense."); *but see State v. Kilma*, 934 S.W.2d 109, 113 (Tex. Crim. App. 1996) (en banc) (Clinton, J., concurring) ("[A]s construed by this Court [of Criminal Appeals], ordinary notions of procedural default only apply to the benefit of the State, never to its detriment."). As a result, it is waived. *See Kothe v. State*, 152 S.W.3d 54, 60 (Tex. Crim. App. 2004) (stating that appellate court "may conclude that the State has

---

[8] Instead, the State made just one passing reference to the voluntariness of the consent during its opening statement, when the assistant district attorney told the trial judge that "the State will show that this was a legally detained traffic stop and that the officer asked for this voluntary consent before the initial traffic stop was over." This was as close as the State ever came to arguing or purporting to prove that Danish granted consent freely and voluntarily. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a). In its closing argument, the State did not even mention the voluntariness of the consent.

17

forfeited . . . [an] argument . . . because it failed to raise it in the trial court"); *Mercado*, 972 S.W.2d at 78.

Since consent is not valid unless the State establishes that it was granted freely and voluntarily, the State's procedural default at the hearing defeated its legal theory that the search was reasonable because it was consensual. *See Meeks*, 692 S.W.2d at 509.[9] And since that was the only justification the State offered to establish the reasonableness of the search, the trial court's ruling was correct under the law applicable to this case, was supported by the record, and will not be disturbed by this Court. *See Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008) ("[T]he trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case.").

---

[9] We note that even if the State had not procedurally defaulted at the hearing, it has defaulted on appeal. The trial court found that Danish granted consent twice, but it did not find that Danish granted the consent freely or voluntarily, which is necessary for the consent to be effective. *See Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985) (en banc). In its brief, the State contends that Danish granted consent voluntarily—not in an "issue presented" but—in five isolated instances in which it makes single-word assertions that the consent was voluntary. The assertions are conclusory in nature because the State offers no "argument" applying the law to the facts of the case to support its contention that the consent was voluntary. *See* TEX. R. APP. P. 38.1(i). The State has not identified or discussed any of the relevant factors for determining the voluntariness of the consent. *See Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000) ("Some relevant factors the Supreme Court has taken into consideration in past cases are: the youth of the accused, the education of the accused, the intelligence of the accused, the constitutional advice given to the accused, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment."). Furthermore, our review of the record indicates that Deputy Garza had removed Danish from the SUV and detained him on the roadside for what the State conceded was an "extended" period of time before he granted consent. Although the extended nature of the detention did not, on its own, prevent Danish from giving consent freely and voluntarily, it is a legitimate factor that the State needed to address on appeal in this case. *See Meeks*, 692 S.W.2d at 509 ("The fact that a person is under arrest does not, in and of itself, prevent a free and voluntary consent from being given. It (custody) is merely one of the factors to be considered.") (citations omitted); *Luera v. State*, 561 S.W.2d 497, 498 (Tex. Crim. App. 1978) ("The detention, if unlawful, may also have tainted appellant's apparent voluntary consent to search."). Yet, the State's brief is silent on this and all other aspects of the issue of the voluntariness of the consent. Based on the foregoing, we conclude that the State has not adequately briefed and has therefore waived its assertion that Danish granted consent voluntarily. *See* TEX. R. APP. P. 38.1(i); *Anderson v. State*, 932 S.W.2d 502, 506 (Tex. Crim. App. 1996) (en banc) ("We will not make appellant's arguments for him.").

In sum, the State has not established that the trial court committed any reversible error in granting the motion to suppress. *See* TEX. R. APP. P. 44.2. Its third issue is therefore overruled.

### III. CONCLUSION

The order of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
12th day of December, 2013.