# NOS. 12-13-00041-CR
# 12-13-00042-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DAVINA WILSON MOORE,* *APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Davina Wilson Moore appeals her convictions for possession of a controlled substance (appellate cause number 12-13-00041-CR) and possession of marijuana (appellate cause number 12-13-00042-CR). She raises five issues on appeal. We affirm.

## BACKGROUND

On December 15, 2011, a Smith County grand jury returned two indictments against Appellant in which she was charged with possession of a controlled substance in a drug free zone and possession of marijuana in a drug free zone. Appellant pleaded not guilty to both indictments. A jury trial was held, and the jury found Appellant guilty of both offenses. The jury assessed two years of confinement for the possession of a controlled substance charge, and five years of imprisonment, suspended for a term of five years, and a fine of $5,000.00, for the possession of marijuana charge. This appeal followed.

## MOTION TO QUASH

In her first issue, Appellant contends that the trial court erred by failing to quash the indictment in cause number 12-13-00041-CR "because it is not a criminal offense for Appellant,

a registered nurse, to intentionally or knowingly possess a controlled substance, namely hydromorphone[,] in an amount of less than one gram including any adulterants and dilutants." The State contends that it was not required to allege facts in the indictment that refute every possible trial defense.

**Standard of Review and Applicable Law**

When a trial court's ruling on a motion to quash is challenged on appeal, our review is de novo. *Smith v. State*, 309 S.W.3d 10, 14 (Tex. Crim. App. 2010). Generally, an indictment that tracks the language of the statute satisfies constitutional and statutory requirements. *Id.* (quoting *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998)). Under the penal code, a prosecuting attorney must negate the existence of an exception to an offense in the accusation charging commission of the offense and prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception. TEX. PENAL CODE ANN. § 2.02(b) (West 2011). However, the penal code's requirement does not apply to offenses committed under the Texas Controlled Substances Act.[1] Specifically, Section 481.184(a) provides that

> [t]he state is not required to negate an exemption or exception provided by this chapter in a complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under this chapter. A person claiming the benefit of an exemption or exception has the burden of going forward with the evidence with respect to the exemption or exception.

TEX. HEALTH & SAFETY CODE ANN. § 481.184(a) (West 2010).

**Discussion**

Appellant was charged under Section 481.115(a) of the health and safety code, which states as follows:

> Except as authorized by [Chapter 481], a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice.

*Id.* § 481.115(a) (West 2010). The applicable portion of the State's indictment alleged that Appellant "did then and there intentionally or knowingly possess a controlled substance, namely,

---

[1] Chapter 481 of the Texas Health and Safety Code may be cited as the Texas Controlled Substances Act. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.001 (West 2010).

hydromorphone, in an amount of less than one gram, including any adulterants and dilutants. . . ."

The controlled substances act explicitly removes the penal code's pleading requirement of negating any exemptions or exceptions in an indictment and places the burden of going forward with evidence with respect to such exemptions or exceptions upon the defendant. *Threlkeld v. State*, 558 S.W.2d 472, 473 (Tex. Crim. App. 1977) (rule requiring state to negate exception no longer applies to indictments alleging possession of controlled substance); *see also Brewster v. State*, 606 S.W.2d 325, 329 n.10 (Tex. Crim. App. 1980); *Johnson v. State*, 705 S.W.2d 154, 155-56 (Tex. App.—Texarkana 1985, no writ). As a result, the State's indictment in cause number 12-13-00041-CR is sufficient. The trial court did not err in denying Appellant's motion to quash. Accordingly, we overrule Appellant's first issue.

### WARRANTLESS SEARCH OF HOME

In her second issue, Appellant contends that the trial court erred by determining that the "warrantless search of [her] entire home was reasonable pursuant to the consent exception to the warrant requirement." Appellant's argument is based on the trial court's denial of her pretrial motion to suppress in both cause numbers.

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *see also Elizondo v. State*, 382 S.W.3d 389, 393 (Tex. Crim. App. 2012). When the trial court's findings of fact are based on an evaluation of credibility and demeanor, we afford almost total deference to the trial court's determination of facts that are supported by the record. *Id.* We review de novo the trial court's application of the law to the facts. *Id.* (citing *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000). We will uphold the trial court's ruling if it is supported by the record and is correct under any theory of law applicable to the case. *Elizondo*, 382 S.W.3d at 393-94.

Appellate review of a trial court's ruling on a motion to suppress is ordinarily limited to the record at the time of the suppression hearing. *Turrubiate v. State*, 399 S.W.3d 147, 150-51 (Tex. Crim. App. 2013)). But if the parties consensually broach the suppression issue again before the fact finder at trial, the reviewing court should also consider the evidence adduced at

3

trial in gauging the propriety of the trial court's ruling on the motion to suppress. ***Black v. State***, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012).

**Applicable Law**

A warrantless entry or search is presumptively unreasonable under the Fourth and Fourteenth Amendments. *See **Rayford v. State***, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003) (citations omitted). But under certain circumstances, this presumption may be overcome because "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" ***Kentucky v. King***, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865 (2011) (citations omitted). The relevant circumstances in which the presumption of unreasonableness may be overcome involve the application of the consent and exigent circumstances exceptions to the warrant requirement to the facts of this case.

*Consent*

"Consent searches are part of the standard investigatory techniques of law enforcement agencies and are a constitutionally permissible and wholly legitimate aspect of effective police activity." ***Fernandez v. California***, 134 S. Ct. 1126, 1132, 188 L. Ed. 2d 25 (2014) (citations omitted). A police officer's entry into a residence is a search for purposes of the Fourth Amendment, but an owner's or occupant's voluntary consent makes that entry constitutionally "reasonable." ***Valtierra***, 310 S.W.3d at 448. Voluntary consent to search a residence also makes a warrantless search constitutionally reasonable. *See **Reasor v. State***, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).

The voluntariness of a person's consent is a question of fact that the state must prove by clear and convincing evidence. ***Valtierra***, 310 S.W.3d at 448. A trial court's finding of voluntary consent is reviewed for abuse of discretion, and a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous. ***Meekins v. State***, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011); ***Johnson v. State***, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007). Voluntariness is determined by analyzing the totality of the circumstances of the situation from the view of an objectively reasonable person. ***Tucker v. State***, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012).

Consent may be validly given by someone with "common authority" over the premises. *See, e.g.*, ***Hubert v. State***, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). Common authority is shown by

4

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at 560-61 (citations omitted). But the consent of one cotenant does not permit entry or search of the premises over the physically present cotenant's express refusal of consent to the entry or search. *See **Fernandez***, 134 S. Ct. at 1133 (discussing ***Georgia v. Randolph***, 547 U.S. 103, 122-23, 126 S. Ct. 1515, 1528, 164 L. Ed. 2d 208 (2006)); ***State v. Copeland***, 399 S.W.3d 159, 163 (Tex. Crim. App. 2013) ("[T]he consent of one co-tenant would not permit entry in the face of the express objection of another tenant.") (discussing ***Randolph***, 547 U.S. at 113-14, 126 S. Ct. at 1522-23).

Consent to enter or search the premises may be specifically limited in scope and may also be revoked. *See **Miller v. State***, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012) (citations omitted). If consent is entirely open-ended, a reasonable person would have no cause to believe that the search would be limited in some way. ***Valtierra***, 310 S.W.3d at 449 (citations omitted). Silence in the face of an officer's actions may also imply consent to that further action. *Id.* But once consent is revoked, an officer must leave the residence unless her continued presence is justified by another exception to the warrant requirement. *See, e.g.*, ***Turrubiate***, 399 S.W.3d at 151.

### Exigent Circumstances

A police officer's warrantless search of a home may be justified by exigent circumstances. *See **King***, 131 S. Ct. at 1856. The need to prevent the imminent destruction of evidence has long been recognized as a sufficient justification for a warrantless search. *Id.* When circumstances call for the prevention of the destruction of evidence, the record must "show proof of imminent destruction based on affirmative conduct by those in possession" of the evidence. *See **Turrubiate***, 399 S.W.3d at 153. This is because occupants who "elect to attempt to destroy evidence only have themselves to blame for the warrantless exigent [] circumstances search that may ensue." ***King***, 131 S. Ct. at 1862. Thus, in determining whether exigent circumstances exist, the court considers whether there is proof that the officer reasonably believed that removal or destruction of evidence was imminent. ***Turrubiate***, 399 S.W.3d at 153.

5

**Discussion**

Appellant filed a motion to suppress evidence that was found inside her home prior to and after the attainment of a search warrant. On appeal, she argues that her consent to the entry of Child Protective Services (CPS) and law enforcement into her home was limited for the purpose of a welfare check of her children and nothing more. Thus, Appellant contends that her consent was insufficient to authorize a search of her home over her husband's "express refusal." The trial court denied Appellant's motion and announced his factual assessments and legal determinations. The facts relating to the search were re-litigated at trial, and Appellant requested the trial court to reconsider its ruling on her motion to suppress, which the court denied. Accordingly, we view the evidence presented at the suppression hearing and at trial in the light most favorable to the trial court's ruling. *See Black*, 362 S.W.3d at 635.

*The Evidence*

Miranda Mercer, a former CPS investigator, testified that she received a report alleging neglectful supervision of Appellant's children. The report stemmed from a daycare worker's contact with Appellant's three-year-old son. The daycare worker testified that the diaper that was in the bag the three-year-old brought to the daycare "smelled funny." The daycare worker could not identify the smell, but described it as an odor that she had "never smelled before." She said it was the same odor she would notice when Appellant's husband would bring the three-year-old to daycare.

Mercer testified that she interviewed Appellant's two oldest children before making contact with Appellant and her husband. One of the children described Appellant's husband's "rolling a joint," putting it in bags, and having people come to their house to smoke or buy the bags. That child also told Mercer that Appellant "knows that it happens but she doesn't use it."

Because she had information regarding the potential use and dealing of drugs, Mercer requested that law enforcement accompany her to Appellant's home for a welfare check of the children. Prior to going to Appellant's home, Mercer met with Officers Kerri Long and Letitia Powell and explained the information she had relating to CPS's investigation. At the suppression hearing, Officer Long testified that Mercer told her Appellant's children were "going to school smelling like marijuana[,] that the teachers complained about it[,] and that they needed to check the welfare" of Appellant's children.

6

When Mercer and the officers arrived at Appellant's home, Appellant answered the door and allowed Mercer and the officers inside. As they approached the door, Officer Long saw Appellant's husband look at them and begin walking towards the back of the house. Once inside, Long asked Appellant where her husband went, and Appellant said, "He went to go take a shower." Shortly thereafter, Long heard the clinking sound of a toilet tank lid being removed.

As she heard this sound, which she associated with people "flushing" marijuana, Officer Long told Appellant that her husband needed to "come out" of the bathroom. Appellant's husband then entered the living room, and when asked what he was doing in the other room, he responded, "Nothing."

Appellant's husband then began yelling at Appellant, Mercer, and the officers. He told the officers that they needed to "get out of his house" because they "didn't have a search warrant," and said that he wanted to talk to a sergeant. Mercer stepped outside the home, but Officers Long and Powell remained inside to maintain the integrity of the scene. Officer Long dispatched for a sergeant, and shortly thereafter, Tyler Police Department Sergeant Robert Phillips arrived.

Sergeant Phillips testified that when he arrived at the residence, he spoke with Mercer, Officer Powell, and another officer who had arrived at the scene. After getting background information about what had transpired, Phillips went inside the residence. Upon entering the residence, Phillips smelled marijuana and explained to Appellant's husband why law enforcement was there. Phillips testified that he "asked [Appellant's husband] if he had any problems with me searching the residence for any contraband related to the [CPS] investigation that was ongoing," and Appellant's husband "verbally agreed to allow [Sergeant Phillips] to search the premises."

Before Phillips began to search the residence, he directed Officer Long to conduct a protective sweep of the home to ensure nobody else (other than Appellant's children) was inside the home. When Long returned, she advised that she saw marijuana inside the master bathroom. Phillips then began his search, starting first in the master bathroom, where he found the marijuana that Long had described. Phillips continued his search of Appellant's home in her husband's presence. Phillips testified that when he opened the door from the kitchen leading to the garage, he noticed an "overwhelming smell" of marijuana and saw a vehicle parked in the garage that had three bundles of U.S. currency inside. Phillips looked in the trunk of the vehicle

7

where he found a duffle bag. He testified that as he "began to grab the duffle bag, [Appellant's husband] asked [him], 'Don't you need a warrant for this search?'" Phillips responded, "Absolutely," and stopped the search. Ultimately, a search warrant authorizing the search and seizure of contraband inside Appellant's residence was obtained.

*Analysis*

The evidence at the suppression hearing and trial support the trial court's findings that law enforcement's entry into Appellant's home was consensual. Thus, Officer Long's and Powell's entry and initial presence inside Appellant's home was "reasonable." *See Valtierra*, 310 S.W.3d at 448. Once Appellant's husband returned to the living room and told the officers and Mercer to "get out," the officers' continued presence in Appellant's home would generally be considered unreasonable because Appellant's consent was revoked by a cotenant with common authority over the premises. *See Fernandez*, 134 S. Ct. at 1133; *Miller*, 393 S.W.3d at 266; *Hubert*, 312 S.W.3d at 560.

But by the time consent had been revoked, Officer Long had observed suspicious activity by Appellant's husband—he immediately began walking towards the back of the house when he saw Mercer and the officers walking up to the door. This conduct, when viewed in light of Appellant's untruthful statement that her husband "went to go take a shower," the sound of noise consistent with "flushing" of drugs, and the fact that Officer Long was accompanying CPS in a welfare check due to alleged drug use, supports the trial court's implied finding that Officer Long could reasonably have believed that the removal or destruction of evidence was imminent. *See Turrubiate*, 399 S.W.3d at 153; *see also Francis v. State*, No. PD-0519-13, 2014 WL 1686938 at *4 (Tex. Crim. App. Apr. 30, 2014) ("[A] reviewing court must assume that the trial court resolved all fact issues in a way that is consistent with its ultimate ruling, so long as those presumed findings of fact are supported by the record."). Thus, Officer Long's and Powell's continued presence in Appellant's home was reasonable due to exigent circumstances created by the imminent destruction of evidence by Appellant's husband. *See King*, 131 S. Ct. at 1856; *Turrubiate*, 399 S.W.3d at 151, 153.

Although exigent circumstances justified Officer Long's and Powell's continued presence inside Appellant's home, they did not conduct a search. Appellant's husband demanded to speak to Officer Long's sergeant. Once Sergeant Phillips arrived at Appellant's home, her husband consented to a search of the home, Appellant did not refuse or object to the

8

search, and thus, the consent given by Appellant's husband permitted the search. *See Fernandez*, 134 S. Ct. at 1133; *Copeland*, 399 S.W.3d at 163.[2]

## Conclusion

After viewing the evidence adduced at the suppression hearing and trial, we conclude that the warrantless search of Appellant's home was not unreasonable under the Fourth Amendment. *See King*, 131 S. Ct. at 1856; *Reasor*, 12 S.W.3d at 818. Consent and exigent circumstances justified the police officers' presence and warrantless search of Appellant's home. *See Fernandez*, 134 S. Ct. at 1132; *King*, 131 S. Ct. at 1856. The trial court did not err by denying Appellant's motion to suppress. Accordingly, we overrule Appellant's second issue.

## EXCLUSION OF EVIDENCE

In her third issue, Appellant contends that it was error for the trial court to exclude her husband's admission to the unadjudicated offense of possession of marijuana. She argues that her husband's admission falls within the statement against penal interest exception to the hearsay rule and that it was error to exclude it.

## Standard of Review

A trial court has considerable discretion in determining whether to exclude or admit evidence. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (en banc) (op. on reh'g); *State v. Dudley*, 223 S.W.3d 717, 724 (Tex. App.—Tyler 2007, no pet.). Absent an abuse of discretion, we will not disturb a trial court's decision to admit or exclude evidence on appeal. *Id.* (citing *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005)). Under this standard, we will uphold a trial court's evidentiary ruling so long as the ruling is within the "zone of reasonable disagreement." *Id.*

## Applicable Law

A person may be charged with the commission of an offense if the offense is committed by her own conduct, by the conduct of another for which she is criminally responsible, or both. TEX. PENAL CODE ANN. § 7.01(a), (b) (West 2011). A person is "criminally responsible" for the

---

[2] In its factual assessments and legal determinations, the trial court found, "Mr. Moore, per the sergeant's testimony and uncontradicted, consented again that they look around." Appellant does not challenge the voluntariness of her husband's consent and there is no evidence in the record to suggest that the consent was other than voluntary. *Williams v. State*, 621 S.W.2d 609, 613 (Tex. Crim. App. 1981) (citations omitted). As a result, the trial court's implied finding of voluntariness is supported by the record and does not appear to be "clearly erroneous." *See Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011); *see also Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012); *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).

conduct of another if "acting with intent to promote or assist the commission of the offense, [s]he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (West 2011). A jointly or separately indicted defendant may testify during his codefendant's trial, but his invocation of his Fifth Amendment privilege does not, in and of itself, render statements relating to his criminal culpability admissible under Texas Rule of Evidence 803(24). *See, e.g.*, *Miller v. State*, 741 S.W.2d 382, 389 (Tex. Crim. App. 1987) (en banc) ("Generally speaking, for obvious reasons, it is not permissible to show that another non-testifying person, who has been jointly or separately indicted for the same offense as the accused, has been either convicted or acquitted."); *Rodriquez v. State*, 552 S.W.2d 451, 456 (Tex. Crim. App. 1977).[3]

In order to be admissible, evidence must be relevant. TEX. R. EVID. 402. Evidence that is not relevant is not admissible. *See id*. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. "The disposition of a defendant's case is not admissible in the trial of a co[]defendant." *Kelly v. State*, 321 S.W.3d 583, 595 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Miller*, 741 S.W.2d at 389).

**Discussion**

Appellant contends that the trial court's exclusion of her husband's confession to the unadjudicated offense of possession of marijuana prevented her from rebutting the State's position that the marijuana was jointly possessed. In cause number 12-13-00042-CR, Appellant was indicted for possessing a usable quantity of marijuana in an amount of five pounds or less but more than four ounces. Testimony at trial showed that marijuana was found inside the master bathroom of Appellant's home and inside the closet of the master bedroom, and that a strong odor of marijuana could be detected from inside the kitchen and garage. Marijuana was found inside the garage, marijuana residue was found inside a container located on top of the

---

[3] Rule 803(24) provides that hearsay is admissible if it is

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in declarant's position would not have made the statement unless believing it to be true. . . .

TEX. R. EVID. 803(24).

refrigerator, approximately fourteen thousand dollars in cash was stored with various food items inside a freezer located in the garage, and approximately four thousand dollars was found in a vehicle parked in the same garage. Appellant's husband also had marijuana inside his pockets.

The fact that Appellant's husband confessed to the unadjudicated offense of possession of marijuana does not make it any more or less probable that Appellant was a party to the offense. *See* TEX. R. EVID. 401, 402; TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2). Appellant testified that she knew her husband smoked marijuana, but he was not supposed to smoke it in the house. She denied having any knowledge of the marijuana that was found in the house, garage, and storage shed. She also testified that she did not know about the eighteen thousand dollars in cash found inside the freezer and vehicle in the garage.

The confession made by Appellant's husband is irrelevant and inadmissible as it relates to Appellant's possession of marijuana charge. *See* TEX. R. EVID. 402; *Miller*, 741 S.W.2d at 389; *Kelly*, 321 S.W.3d at 595; *see also Medina v. State*, 743 S.W.2d 950, 955 (Tex. App.—Fort Worth 1988, writ ref'd) (codefendant's punishment "was not relevant at guilt/innocence phase" of defendant's trial). The trial court did not abuse its discretion by excluding the confession. *See Martin*, 173 S.W.3d at 467. Accordingly, we overrule Appellant's third issue.

### ADMISSION OF EVIDENCE

In her fourth issue, Appellant contends that the trial court abused its discretion when it admitted "unsealed and opened vials of medicine" into evidence over her hearsay and relevancy objections. As stated above, we will uphold the trial court's ruling on the admissibility of the evidence as long as the ruling is within the "zone of reasonable disagreement." *See Martin*, 173 S.W.3d at 467.

## Applicable Law

Although relevant evidence is generally admissible, there are certain circumstances in which relevant evidence may be properly excluded. *See* TEX. R. EVID. 402, 403. One such circumstance involves the use of evidence that contains hearsay, and another involves a balancing test of the probative value of the proffered evidence against its prejudicial effect. *See* TEX. R. EVID. 403, 802.

11

*Hearsay*

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). If an item of evidence does not meet this definition, it is not hearsay. *Martinez v. State*, 17 S.W.3d 677, 688 (Tex. Crim. App. 2000) (en banc) (defining hearsay as an "out-of-court statement 'offered in evidence to prove the truth of the matter asserted'"). Whether a statement qualifies as hearsay depends on the purpose for which it is offered. *See, e.g.*, *id.*; *Stafford v. State*, 248 S.W.3d 400, 407-08 (Tex. App.—Beaumont 2008, pet. ref'd) (divorce documents were circumstantial evidence of deteriorated condition of marriage at time of wife's murder). The hearsay rule will not be violated when an extrajudicial statement or writing is admitted "as circumstantial evidence from which an inference may be drawn, and not for the truth of the matter stated, therein[.]" *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995).

When evidence containing hearsay is offered for purposes other than its truth, it is appropriate for the trial court to restrict the evidence to its proper scope and instruct the jury accordingly. *See* TEX. R. EVID. 105(a). However, the burden is on the party opposing the evidence to object and request a limiting instruction at the time the evidence is introduced. *See id.*; *Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001). Absent such a request, the evidence may be used for all purposes and the court's admission of the evidence without limitation shall not be a ground for complaint on appeal. *See* TEX. R. EVID. 105(a); *Hammock*, 46 S.W.3d at 895.

*Exclusion of Relevant Evidence*

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. "Probative value" refers to how strongly an item of evidence serves to make more or less probable the existence of a fact of consequence to the litigation, coupled with the proponent's need for that item of evidence. *Hernandez v. State*, 390 S.W.3d 310, 323 (Tex. Crim. App. 2012). "Unfair prejudice" refers to the tendency of the evidence to suggest that decisions may be made on an improper basis, commonly an emotional one. *Id.* at 323-24.

A Rule 403 analysis must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse

or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that the presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

**Discussion**

In cause number 12-13-00041-CR, Appellant was indicted for possession of less than one gram of hydromorphone in a drug free zone. She contends that it was error for the State to admit "vials and medication that were not in their original condition," because they had not been tested and were hearsay. Appellant does not identify the objectionable evidence in the argument section of her brief, but our review of her statement of facts and the record in this case shows that the items comprising State's exhibit 19 included, among other things, vials seized from Appellant's residence. Thus, we limit our review of Appellant's fourth issue to the vials admitted as part of exhibit 19.

*The Evidence*

During opening statements, Appellant's attorney told the jury that the evidence would show Appellant had made a "dumb mistake, multiple times, by leaving things in her pocket, [and] going home and putting them in a drawer or bag, when she probably should have just taken them back to the hospital and thrown them away or thrown them into a garbage can and nobody would have ever known."

Exhibit 19 is a box that contains vials, substances, and other items seized from Appellant's residence. Some of the items were sent to the Department of Public Safety laboratory for testing but were never actually tested. The majority of the vials in exhibit 19 were found in the same dresser as the vial of hydromorphone—the controlled substance alleged in the indictment.

When the State offered exhibit 19 into evidence, Appellant's attorney objected on grounds of hearsay and relevance. The State argued that the evidence was relevant, contextual, and "goes to show lack of mistake." "It's one thing if you have one or two vials. It's another thing if you've got 40 of them." The evidence was admissible, the State contended, "to show the

number and the context to go to knowledge and intent and lack of mistake." The trial court overruled Appellant's objection and exhibit 19 was admitted without limitation.[4]

The vials in exhibit 19 contained labels purporting to identify the substances inside, but some vials were empty.[5] The following were found in the top left drawer of the dresser:

> [s]even vials labeled "Lorazepam," two vials labeled "Butorphanol Tartrate," two vials labeled "Marcaine," two vials labeled "Metoclopramide," two vials labeled "Ondonsetron," one vial labeled "Bacitracin," one vial labeled "Diazepam," one vial labeled "Ditiazem Hydrochloride," one vial labeled "Hydroxyzine Hydrochloride," one vial labeled "Lidocaine Hydrochloride," one vial labeled "Miclazolam Hydrochloride," and one vial labeled "Xylocaine MPF."

Other items introduced as part of exhibit 19 were found in other areas of the dresser and included two vials labeled "Lidocaine Hydrochloride," one vial labeled "Bupivacaine," one vial labeled "Gentamicin," and one vial labeled "Metoclopramide." One vial labeled "Bupivacaine Ephinephrine" was found on top of a night stand, and one vial labeled "Bacteriostatic" was found in a black bag in the master bedroom. Two more vials labeled "Gentamicin" were introduced, in addition to one vial labeled "Lidocaine Hydrochloride," and one vial labeled "Heparin Sodium." These four vials were found inside a Dooney & Bourke purse that was hanging inside the master bathroom closet. The remaining vials contained in exhibit 19 were found in the master bathroom and included one vial labeled "Bacitracin," one vial labeled "Papaverine Hydrochloride," and one vial labeled "Sensorcaine MPF" ("Bupivacaine Hydrochloride and Epinephrine Injection").

*Appellant's Hearsay Objection*

To support her contention that the vials are hearsay, Appellant cites ***Jackson v. State***, 518 S.W.2d 371 (Tex. Crim. App. 1975), and ***Shaffer v. State***, 184 S.W.3d 353 (Tex. App.—Fort Worth 2006, pet. ref'd).

In ***Jackson***, the defendant was indicted for selling methaqualone, a dangerous drug, without a prescription. ***Jackson***, 518 S.W.2d at 372. The defendant challenged the sufficiency of the evidence, contending that the State failed to prove that methaqualone was a dangerous drug. *See id.* At the time of the offense, methaqualone was not identified as a dangerous drug by

---

[4] Appellant did not request a limiting instruction upon the admission of exhibit 19.

[5] In her statement of facts, Appellant states, "[T]he record reflects that some of the vials were empty[, and] it is unclear how many vials were empty."

14

statute, and the statute in effect provided that a "dangerous drug" included any drug that bears the legend, "Caution: Federal law prohibits dispensing without prescription." *Id.* 372-73 (citations omitted). The State introduced a bottle bearing the label "Methaqualone" that also contained the words "Caution—Federal law prohibits dispensing without a prescription." *Id.* at 372. The bottle did not have any connection with the transaction or the offense alleged in the indictment—the capsules were not sold in the bottle, and there was no evidence of where the bottle came from or whether the label was printed before the date of the offense. *Id.* at 372-73. As a result, the court concluded that the State "could *only* have offered the bottle and label for the truth of the matter stated on the label" and held that the defendant's hearsay objection should have been sustained. *Id.* at 373 (emphasis added). Because there was no other evidence to prove that the methaqualone was a dangerous drug, the evidence was insufficient to support the conviction. *Id.*

In *Shaffer*, the defendant was indicted for possession of pseudoephedrine, with intent to manufacture a controlled substance, namely, methamphetamine. *Shaffer*, 184 S.W.3d at 357. The defendant challenged the sufficiency of the evidence and argued that the trial court abused its discretion in admitting bottles of cold medicine over his hearsay objections. *Id.* The indictment alleged possession of the chemical precursor pseudoephedrine, which was marked as an ingredient on the bottles of cold medicine that had been seized from the defendant's vehicle and admitted into evidence. *Id.* at 358. The bottles were sealed, and the labeling on the bottles identified the cold medicine as containing pseudoephedrine. *Id.* The State relied on the labeling as proof that the tablets contained pseudoephedrine, but the defendant objected, complaining that the labeling was hearsay. *Id.* The defendant argued that the labeling on the packages could not serve as proof of their contents. *Id.* at 360-62.

The Fort Worth court of appeals agreed that the labeling was hearsay because it was offered to prove the truth of the matter asserted—that the tablets contained pseudoephedrine. *Id.* at 362. However, the court held that the hearsay was admissible. *See id.* The court reasoned that (1) the labeling consisted of a list of medication the product contained, (2) that list was regulated by federal law and relied upon by the public, and (3) the cold medicine was contained in unopened bottles, which indicated the contents had not been changed since the manufacturer bottled them. *Id.* Therefore, the court concluded that the label was sufficiently reliable to establish that the cold medicine contained pseudoephedrine, and ruled that it was admissible

15

under Rule 803(17). *Id.*; *see also* TEX. R. EVID. 803(17) ("Market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations" are not excluded by the hearsay rule.).

Unlike the prosecutions in *Jackson* and *Shaffer*, the State in this case did not use the vials in exhibit 19 for the purpose of identifying the substance alleged in the indictment. *See Jackson*, 518 S.W.2d at 372-73; *Shaffer*, 184 S.W.3d at 358. In other words, the State did not offer the vials for the truth of the information on their labels (that they contained the controlled substance or dangerous drug named on the label). *See Martinez*, 17 S.W.3d at 688. Furthermore, unlike the bottle used in *Jackson*, the vials in exhibit 19 are connected to Appellant's possession of hydromorphone because a majority of them were found in the same dresser in which the vial of hydromorphone was found. *See Jackson*, 518 S.W.2d at 372-73.[6]

The vials in exhibit 19 are circumstantial evidence from which the inference may be drawn that Appellant's possession of the vial of hydromorphone was not a one-time mistake because she had numerous other vials in her possession. *See Dinkins*, 894 S.W.2d at 347; *see also Johnston v. State*, 145 S.W.3d 215, 222 (Tex. Crim. App. 2004) (State may rebut defense of mistake or accident "with evidence of other conduct by the defendant which tends to show [her] actions on those occasions, and hence on this occasion as well, were not mistaken, inadvertent, or accidental").

As offered, the vials in exhibit 19 are not hearsay. *See Martinez*, 17 S.W.3d at 688; *Dinkins*, 894 S.W.2d at 347. Although the evidence ultimately was admitted for all purposes because Appellant failed to request a limiting instruction, it was not outside the zone of reasonable disagreement for the trial court to admit the vials to rebut Appellant's defense of mistake and prove that her possession was intentional or knowing. *See Martin*, 173 S.W.3d at 467; *Johnston*, 145 S.W.3d at 222; *see also* TEX. R. EVID. 105(a); *Hammock*, 46 S.W.3d at 895.

*Appellant's Relevancy Objection*

As an additional ground, Appellant contends that the trial court erred in admitting the vials contained in exhibit 19 because their probative value did not outweigh the danger of unfair prejudice. By alleging mistake as a defense to the possession of hydromorphone charge, Appellant challenged the "intentionally or knowingly" portion of the State's indictment.

---

[6] Appellant later testified that all of the vials came from the hospitals where she formerly worked.

The main issue in Appellant's possession of controlled substance case was whether her possession was intentional or knowing. The fact that several vials—some empty and some not empty—were found in the same dresser as the hydromorphone, makes it more probable that Appellant's possession of the hydromorphone was not a mistake, an accident, or inadvertent. *See* TEX. R. EVID. 401, 402; *Hernandez*, 390 S.W.3d at 323; *Johnston*, 145 S.W.3d at 222.

The tendency of the vials to suggest a decision on an improper basis was low because the State did not offer the vials to prove the substance alleged in the indictment. *See Gigliobianco*, 210 S.W.3d at 641. The tendency of the vials to confuse or distract the jury from the main issue was also low because it showed that Appellant had, on more than one occasion, brought similar vials home from the hospital, and for the most part, stored them in the same place. *See id.* The tendency that the vials would be given undue weight was also lessened by testimony that the substance in the vials (if there was any) had not been tested and that Appellant was not charged with possessing the substances in the vials. *See id.*

There is nothing in the record that suggests the jury was not equipped to evaluate the probative force of the vials contained in exhibit 19. *See id.* And while the vials were numerous, the State's presentation of the evidence did not consume an inordinate amount of time, or repeat evidence that had already been admitted. *See id.* at 641-42.

After considering the State's need to use the vials in exhibit 19 to rebut Appellant's defense of mistake in light of the tendency for the evidence to suggest that the jury would make a decision on an unfair basis, we conclude that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Hernandez*, 390 S.W.3d at 323-24. The trial court's decision to admit the vials in exhibit 19 was not outside the zone of reasonable disagreement. *See Martin*, 173 S.W.3d at 467. Accordingly, we overrule Appellant's fourth issue.

## CHARGE ERROR

In her fifth issue, Appellant contends that the "trial court's failure to charge the jury on [her] requested instructions deprived [her] of her right to a fair trial." She contends that there was charge error in both cause numbers.

**Standard of Review**

A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of how the trial court views the credibility of the defense. *Celis v. State*, 416 S.W.3d 419, 430 (Tex. Crim. App. 2013) (citing *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008)). An erroneous or incomplete jury charge jeopardizes a defendant's right to jury trial because it fails to properly guide the jury in its fact finding function. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994) (citations omitted). But an erroneous or incomplete jury charge does not result in automatic reversal of a conviction. *Id.* Appellate review of claims of jury charge error involves a determination of whether the charge is erroneous and, if it is, a harm analysis. *Celis*, 416 S.W.3d at 423. If there is no error, a harm analysis need not be conducted. *See id.*

**Exception to Prosecution**

Appellant contends that there is charge error in cause number 12-13-00041-CR because "she was entitled to a special instruction on exceptions to the prosecution, as provided by the Texas Health and Safety Code." Appellant argues that the controlled substances act provides an exception to prosecution when a practitioner possesses a controlled substance that has been lawfully obtained in accordance with state or federal law.

*Applicable Law*

Section 481.115(a) of the health and safety code provides that "[e]xcept as authorized by [Chapter 481], a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice." TEX. HEALTH & SAFETY CODE ANN. § 481.115(a).

Section 481.184 of the health and safety code provides that a person claiming the benefit of an exemption or exception under Chapter 481 has the burden of going forward with the evidence with respect to the exemption or exception. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.184(a).

*Discussion*

Appellant testified that she is a registered nurse and has worked at hospitals in the emergency room and surgery departments. She obtained the vials found inside her residence while she was working as a nurse at each hospital and testified that she never obtained any drug

18

by "stealing it." When asked to explain how she accessed the controlled substances, Appellant testified, "If a doctor ordered a particular drug, as a nurse, you had a code, and you would get that particular drug. . . . There was a code that you had to have to get into the medication dispenser." In response to her attorney's question whether she accessed medication at the hospital without being instructed to do so by a doctor, Appellant responded, "No, sir."

Throughout her testimony, Appellant maintained that her possession of the hydromorphone was a mistake and an accident. She also testified that she had planned to return the vials to the hospital, but never did.

Appellant did not have a prescription for any of the vials that were found in her residence, but testified that she did not use or intend to use them for her personal consumption, or to sell them to someone else.

On cross-examination, the State revisited Appellant's testimony regarding the vials that were found at her residence:

> PROSECUTOR: Ma'am, you said that all those vials, everything you have, vial-wise, was stuff that you got while you were [working at the hospital]; is that right?
>
> APPELLANT: Yes.
>
> PROSECUTOR: And what that meant was a doctor gave you the medicine, and you were allowed to use the medicine at the hospital, injecting patients, doing whatever you needed to do during your business at the hospital, correct?
>
> APPELLANT: Yes.

On redirect, one of the last exchanges between Appellant and her attorney regarding the possession of hydromorphone charge included the following dialogue:

> DEFENSE COUNSEL: Now, you're not telling the jury that the doctor said that, even though you obtained them—in the course of your employment, the doctor didn't say, "If you don't use it all, you can take it home with you and bring it back or throw it way?" You're not saying that, are you?
>
> APPELLANT: No, sir.

Appellant's testimony ended upon answering the final question asked by the State:

PROSECUTOR: So you weren't acting in the course of your business as a nurse at [the hospitals] when you were at home with that stuff?

APPELLANT: No.

Although Appellant's testimony is that she accessed medications while at the hospital pursuant to a doctor's order, the evidence does not raise the issue that Appellant obtained an order of a practitioner acting in the course of professional practice that authorized her to possess the hydromorphone at her residence. *See* Tex. Health & Safety Code Ann. § 418.115(a); *Celis*, 416 S.W.3d at 430. Failing to include the special instruction does not render the charge erroneous as it pertains to cause number 12-13-00041-CR. *See id.* at 423. Accordingly, the trial court did not err by excluding the special instruction.

## Lesser Included Offense

Appellant contends there was evidence that would have permitted a finding that if she was guilty of possession of marijuana at all, she was guilty only of possessing a lesser amount than alleged in the indictment. Therefore, she argues that she was entitled to a lesser included offense instruction in cause number 12-13-00042-CR. The State contends that Appellant's argument on appeal does not comport with her argument at trial. But even if error is preserved, the State argues, Appellant's testimony precludes a lesser included offense instruction.

### *Applicable Law*

In determining whether an instruction on a lesser included offense should be given, the court must first determine if the proof necessary to establish the charged offense also includes the lesser offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). If this threshold is met, the court must then consider whether the evidence shows that if the appellant is guilty, she is guilty only of the lesser offense. *Id.* Because it is undisputed that possession of marijuana in an amount less than five pounds but more than four ounces includes the proof necessary to establish the misdemeanor offense of possession of marijuana, our focus is on the second step of the analysis. *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(1)-(3) (West 2011); *see, e.g.*, *Jones v. State*, 632 S.W.2d 646, 647 (Tex. App.—El Paso 1982, writ. ref'd).

Whether there is some evidence that would permit a rational jury to find that a defendant is guilty only of the lesser offense is a question of fact based on the evidence presented at trial, regardless of whether the evidence is weak, impeached, or contradicted. *Cavazos*, 382 S.W.3d at

383 (citing **Bell v. State**, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985)). Meeting this threshold requires affirmative evidence that both raises the lesser included offense and rebuts or negates an element of the greater offense. **Cavazos**, 382 S.W.3d at 385. "A defendant's own testimony that [she] committed no offense . . . is not adequate to raise the issue of a lesser included offense" instruction. *See* **Lofton v. State**, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001).

### *Preservation of Error*

During the charge conference, the trial court addressed Appellant's written request for a special instruction on joint possession. Appellant's attorney then requested an additional instruction on "lesser included offenses because there's been testimony about the weight of the substance." Appellant's attorney argued that someone else had been put in "direct possession" of "about more than 150 grams of the marijuana . . . that substantially could affect what Davina Moore could be convicted of. It would drop it from—as low as a Class A misdemeanor."

Appellant's attorney argued that if the jury did not believe that Appellant possessed the marijuana found inside the master bathroom, she would necessarily be guilty of possessing a lesser amount of marijuana. Just before the trial court recessed the case for the attorneys to conduct additional research on the issue, Appellant's attorney clarified his requested instruction as follows:

> I'm requesting the lesser included charge because it's supported by the evidence
> that Davina Moore—that someone else exclusively possessed a large amount of
> that marijuana. And that's why I'm requesting the lesser included charge.

This clarification sufficiently apprised the trial court of Appellant's complaint, and comports with her argument on appeal. *See* TEX. R. APP. P. 33.1. Therefore, we proceed to the merits of Appellant's complaint.

### *The Evidence*

When Officer Long asked Appellant what her husband was doing as he walked to the back of the house upon their arrival, Appellant said that he "went to go take a shower." This statement was not true—Appellant's husband was attempting to flush marijuana down the toilet in the master bathroom. The bulk of the marijuana that Appellant is charged with possessing (i.e. a package weighing more than four ounces) was found in the tank of the toilet in the master bathroom, where Appellant's husband went to "take a shower." Although Appellant's husband

had been inside the master bathroom and marijuana was found on his person, this evidence does not prove that he had "exclusive possession" of the place where the marijuana was found. Photographs of the master bathroom show two toothbrushes on the vanity next to the sink, vials from the hospital that Appellant admitted bringing home were found inside the vanity of the master bathroom, and one of Appellant's purses was found inside the master bathroom closet. Thus, the evidence does not show that "someone else" had exclusive possession of the place where the marijuana was found—the master bathroom. *See **Poindexter v. State***, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) ("[W]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.") (citations omitted). The State's theory of culpability for the marijuana charge was joint possession, and Appellant does not challenge the sufficiency of the evidence linking her to the marijuana found inside the toilet tank.

The evidence does not raise an issue as to Appellant's guilt of a lesser included misdemeanor offense because her defense was that she was not guilty of any possession. *See **Jones***, 632 S.W.2d at 647; *see also **Lofton***, 45 S.W.3d at 652. To illustrate her defense, we quote Appellant's testimony:

> DEFENSE COUSEL: Now, in addition to my questions about did you know it was there or had you ever seen it, tell this jury whether or not you possessed any of that marijuana.
>
> APPELLANT: I did not possess any of the marijuana.
>
> . . . .
>
> DEFENSE COUNSEL: Was any of the marijuana that you've been charged with, is it yours?
>
> APPELLANT: No, sir.
>
> DEFENSE COUNSEL: Did you possess it?
>
> APPELLANT: No, sir.
>
> DEFENSE COUNSEL: But you understand that's a question the jury's going to have to decide?
>
> APPELLANT: Yes, sir.

The evidence shows that Appellant's culpability for possession of marijuana is based on the jury's credibility determinations—Appellant was guilty of possessing all of the marijuana as charged or none of it. Failure to incorporate an instruction on the lesser included offense as it pertains to cause number 12-13-00042-CR did not render the charge erroneous. *See Celis*, 416 S.W.3d at 423. Accordingly, the trial court did not err in denying Appellant's request for a lesser included offense instruction.

Having concluded that the charge was not erroneous as it pertains to cause number 12-13-00041-CR and 12-13-00042-CR, we overrule Appellant's fifth issue.

## DISPOSITION

Having overruled Appellant's five issues, we *affirm* the judgment of the trial court.

SAM GRIFFITH
Justice

Opinion delivered May 30, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 30, 2014**

**NO. 12-13-00041-CR**

**DAVINA WILSON MOORE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-1663-11)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

MAY 30, 2014

NO. 12-13-00042-CR

**DAVINA WILSON MOORE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-1664-11)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*